WHIPPANY PAPERBOARD CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LOCAL NO. 301, UNITED PAPERWORKERS OF AMERICA, C. I. O., ET AL., DEFENDANTS-APPELLANTS, AND JOHN VAN HINE, GEORGE MAZZONE, ET AL., DEFENDANTS.

Argued November 24, 1952—Decided December 22, 1952.

154

156

158

*Mr. Emil Oxfeld* argued the cause for the appellants (*Messrs. Rothbard, Harris & Oxfeld,* attorneys; *Mr. Samuel L. Rothbard,* of counsel; *Mr. Howard A. Goldberger,* on the brief).

*Mr. Charles Handler* argued the cause for the respondent (*Messrs. Louis R. Lombardino* and *Samuel H. Berlin,* on the brief).

The opinion of the court was delivered by

BURLING, J. A civil action in the nature of a labor injunction suit was instituted by Whippany Paperboard Co.,

Inc. (hereinafter called the company), a New Jersey corporation having its principal place of business at Whippany, Morris County, New Jersey, and having three manufacturing plants at Whippany, namely the Hanover Mill, the Stony Brook Mill and the Eden Mill. The latter, having an entrance gate approximately 1,000 feet northerly of Thomas Street in Whippany, was the general site of the occurrences from which the present proceedings emanate. The company's complaint filed in the Superior Court, Chancery Division, named as defendants United Paperworkers of America, an "international union belonging to the Congress of Industrial Organizations (C. I. O.)," Local No. 297 and Local No. 301, "voluntary labor unions affiliated with United Paperworkers of America," various named individuals designated as "officers, trustees, board members or stewards" of the two defendant locals, including the defendants-appellants herein, namely Anthony Adamo (International Representative "of the parent union"), Martin Scalley (President, Local 297), George Skurchak (Assistant Chief Steward, Local 297), Jess (Jesse) Fisher (Executive Board Member, Local 301) and Phil (Philip) Nobile (Financial Secretary, Local 301).

At the time of the incidents involved in this matter that litigation had not progressed beyond the initial phase and therefore there was no final determination of the issues between the parties thereto. Under the circumstances we advert to the complaint to show the nature of the suit only, and not to adjudicate the main dispute nor to resolve any disputed fact therein. The civil action has not been brought to final judgment and no appeal therein is pending at this time.

The company's complaint included allegations relating to the history of collective bargaining between the company and the defendants, the inception of the strike by the defendants at the company's plants in August 1951, attempts at negotiations and mediation including conferences at the office of the New Jersey State Mediation Board, conduct of the company and the defendants during the strike preceding the times alleged in the complaint as basis for the suit, the

events alleged to have occurred on November 12, 1951, which the company asserted as the factual basis for the relief sought, and allegations of threatened substantial irreparable injury. The irreparable injury was characterized in the complaint as danger to company property through freezing, fire and explosion by virtue of inability to maintain the heating and sprinkler systems in the premises (there being present in the plants "many tons of waste paper and tons of finished paper stock and other miscellaneous combustibles") and through defendants' prevention of admission of the company's "supervisory, inventory and maintenance employees" to company property, endangering not only the plants but the surrounding community as well; specific conduct of the defendants was alleged to be "illegal" mass picketing, intimidation and threats of violence. The company sought injunctive relief against these alleged practices of the defendants. The complaint was verified by affidavit.

Upon this complaint the Superior Court, Chancery Division, Judge Thomas L. Stanton presiding, on November 16, 1951 filed an order requiring the defendants to show cause "before this court on the 21st day of November, 1951 at the Hudson County Court House" why the relief sought by the company should not be granted, and further ordered that pending the hearing on that return day the defendants be enjoined and restrained as follows:

"(a) From gathering, loitering or picketing about or around plaintiff's plants in Whippany, New Jersey, as set forth in the Bill of Complaint, or about the public streets or sidewalks approaching thereof or in close vicinity thereof; provided that not more of the number of pickets specified below may peaceably walk up and down the sidewalks or the streets adjacent to the entrances to said plants, specified below, upon condition that they maintain a space of at least ten feet between each picket and that they or any of them do not obstruct the entrances or any thereof to said plants, or molest or interfere with the entry into or egress from said plants by any employees, servants, or agents of plaintiffs, or by any person having business with plaintiff, that is to say:

(1) 3 pickets on the sidewalks and public streets outside and in front of the entrance of each of said plaintiff's plants in Whippany, New Jersey.

(b) From violence or threats of violence or intimidation practiced upon any person now employed by plaintiff, or who is willing to be employed by plaintiff.

(c) From ordering, commanding, directing, assisting, aiding or abetting in any manner whatsoever any person or persons who attempt to violate subdivisions (a) and (b) of this order, or either of them."

and the order also included the following provisions:

"It is further ORDERED that a copy of this order, which need not be certified, be served upon the defendants, Local No. 301 and Local No. 297, United Paperworkers of America, by service upon any of its officers or trustees within 3 days from the date hereof, and upon the other defendants within 3 days from the date hereof.

It is further ORDERED that any of the parties have leave to move to dissolve, enlarge or modify the restraints herein contained upon one days notice served upon the attorneys of the parties."

On November 21, 1951 the defendants named in the company's complaint appeared through counsel and applied for a continuance. The Superior Court, Chancery Division, entered an order granting the continuance and ordering the restraints contained in the order to show cause of November 16, 1951, *supra,* to be "continued and remain in full force and effect." On similar applications by the defendants, further continuances were granted by the court. Each of the orders granting the continuances continued the restraints ordered on November 16. Orders of this nature were filed December 5, 1951, December 20, 1951, January 23, 1952, February 20, 1952, March 19, 1952, April 25, 1952 and June 5, 1952 (the latter continuing the matter to July 8, 1952). These orders were all made by Judge Stanton, who ordered the initial restraints on November 16, 1951.

The incidents from which the present proceedings stem occurred on April 7 and April 8, 1952. Subsequent to these occurrences, on motion of the company supported by affidavits, on April 9, 1952 an order issued by the Superior Court, Chancery Division, Judge Joseph L. Smith presiding, which contained the following:

"* * * it now appearing to the court upon the affidavits of Anthony Desiderio, Frank Resotka, Carmine Attanasio and Joseph

162

Scocozza that on April 7 and April 8, 1952, the defendants Anthony Adamo, Martin Scalley, George Skurchak, Jesse Fisher, Phil Nobile, Local 301 and Local No. 297, did congregate and cause others to congregate in and about the plaintiff's plants described in the complaint and in the order above referred to, in large numbers in violation of the terms of said order and did threaten persons lawfully upon the property of the plaintiff and did prevent lawful ingress and egress to plants of the plaintiff and did commit acts of intimidation, violence and destruction of property in violation of the terms of said order, all as appears in the affidavits annexed hereto and filed herewith, and refused to obey the commands and directions of said order and the court being of the opinion that the said defendants Anthony Adamo, Martin Scalley, George Skurchak, Jesse Fisher, Phil Nobile, Local No. 301 and Local No. 297 may be in contempt of court by reason thereof it is on this 9th day of April, 1952

ORDERED that the said defendants Anthony Adamo, Martin Scalley, George Skurchak, Jesse Fisher, Phil Nobile, Local No. 301 and Local No. 297 show cause before this court at the Essex County Hall of Records in Newark, New Jersey on Friday the 18 day of April, 1952, at ten o'clock in the forenoon, or as soon thereafter as counsel can be heard why they should not be adjudged guilty of contempt of this court for failure to obey the restraining order served upon them in this action,"

This is the order to show cause initiating the proceedings with which we are concerned.

On April 18, 1952 a hearing on the return of the foregoing order of April 9, 1952 was held in the Superior Court, Chancery Division, at Essex County, before Judge Alfred A. Stein. At this hearing all the defendants involved in this appeal were represented by the same counsel, who stated in open court that he represented "all the defendants in this order," and entered the following plea:

"On behalf of my defendants, the plea is not guilty, again, with the Court's permission reserving the right to withdraw the plea for the purpose of making a motion addressed to the sufficiency of the affidavits and order to show cause."

At this hearing defendants Adamo, Scalley, Skurchak and Fisher were present in person; defendant Local 297 was present through counsel and its attending officer Scalley (president); defendant Local 301 was present through coun-

sel and its attending officer Fisher (president). Defendant Nobile was not present because he was not served with the April 9, 1952 order to show cause, but his counsel advised the court that he would produce Nobile at the trial and would waive service of that order. The defendants having pleaded not guilty to the order to show cause, the court on April 18, 1952 set the date for trial as Monday, May 5, 1952 in Essex County, and ordered "* * * that Charles Handler, Esq., be and he is hereby designated and assigned as counsel to prosecute these proceedings on behalf of this court." Mr. Handler was counsel for the plaintiff company, but by virtue of the above order was clothed with the separate status of a prosecuting officer of the court in the contempt proceeding.

On May 2, 1952 the defendants moved to vacate the April 9, 1952 contempt order to show cause on several grounds, including: (1) the injunctive order of November 16, 1951 was void because (it was alleged) the complaint did not state a cause of action, no valid suit was pending, ex parte proof was insufficient, the order contained no finding as to substantial and irreparable injury and it contained no limit as to time, the restraints were too vague and were not justified by the allegations of the complaint or the ex parte proof, and it provided for service of uncertified copies thereof on the defendants; (2) the contempt orders to show cause did not provide for or permit the defendants to file answer; (3) the contempt order to show cause contained a misjoinder of parties and causes of action; and (4) the affidavits were insufficient to support the contempt order to show cause. The defendants moved in the alternative for: (1) a trial by jury presided over by a judge other than the one who issued the injunctive order of November 16, 1951, (2) a separate trial for each defendant, (3) a bill of particulars or more definite statement of facts, (4) vacation of the order appointing Charles Handler, Esquire, as the prosecutor of the contempts, and (5) postponement of the trials.

By order filed May 2, 1952 the Superior Court, Chancery Division, denied the defendants' motion in all respects ex-

cept for trial by a jury presided over by a judge other than the one who issued the injunctive order. This was allowed.

Then the contempt proceeding on the order of April 9, 1952 came on for trial May 5, 1952, before a jury in the Superior Court, Chancery Division, in Essex County (Judge Stein presiding). The court directed the parties to proceed, and thereupon the defendants filed a challenge to the array, asserting as the ground for the challenge that the contempt proceeding should be tried in Hudson County, where the civil action was laid, although defendants admitted that the judge had the "right to preside at this trial no matter where it is venued," and also admitted that in the previous contempt proceedings arising from the same injunctive order of the court they had "stipulated on the record to waive the fact that the trial was going to be conducted in Essex County." The trial court disallowed the challenge for the stated reason that there was no provision of law requiring trial of a criminal contempt proceeding to be held in the county of venue of the civil action in which the contempt charge arose. After denial of defendants' motion, defendants' counsel produced the defendant Nobile, who thereupon personally pleaded not guilty to the charge, and waived through counsel the technicalities of service of the contempt order to show cause. As hereinbefore noted, the other defendants to the April 9 contempt order to show cause had pleaded not guilty thereto on April 18, 1952.

The trial of the defendants-appellants then proceeded. At the conclusion thereof the jury rendered a verdict of guilty against each of them for violation of the injunctive order aforesaid. Judgment was accordingly entered and the defendants-appellants respectively were sentenced on May 23, 1952. Scalley and Fisher were each sentenced to pay a fine of $300 and to imprisonment in the Essex County jail for 60 days; Adamo, Nobile and Skurchak were each sentenced to pay a fine of $100 and to imprisonment in the Essex County jail for 15 days; Locals 297 and 301 were each sentenced to pay a fine of $100. On May 31, 1952 they

filed their notice of appeal to the Superior Court, Appellate Division, from the judgments of conviction of contempt of court; prior to hearing there, as hereinbefore noted, certification was allowed by this court on our own motion.

The principal questions involved on this appeal were in substance the following: (1) Was the contempt order to show cause void on the ground that the injunctive order alleged to have been violated was void? (2) Was the contempt order to show cause void because of improper venue? And corollary to this question, did the trial court commit reversible error or violate the defendants' rights in denying defendants' challenge to the array? (3) Did the trial court err in denying defendants' motion for dismissal at the close of the case for the prosecution? (4) Did the trial court err in its charge, or in refusal to charge certain requests presented by the defendants?

Orientation for comprehension of the·questions involved, and of our decision with respect thereto, requires the preliminary observation that the proceeding under review was one of criminal contempt of court. It is settled in our law that a criminal contempt proceeding is brought "to vindicate the authority of the court with the public on one side and the defendants on the other." *Swanson v. Swanson,* 8 *N. J.* 169, 180 (1951). And violation of a judgment or order forbidding the doing of an act constitutes criminal contempt. *Staley v. South Jersey Realty Co.,* 83 *N. J. Eq.* 300, 304 *(Sup. Ct.* 1914); *Gompers v. Buck's Stove & Range Co.,* 221 *U. S.* 418, 31 *S. Ct.* 492, 55 *L. Ed.* 797 (1911). The court in which or against which the alleged contumacious conduct occurred has the authority to institute and carry through such a criminal contempt proceeding to its termination, either on its own motion or when the matter is brought to its attention by a party to the civil cause in which the conduct occurred. *Staley v. South Jersey Realty Co., supra,* (83 *N. J. Eq.,* at *p.* 305); *Frank v. Herold,* 64 *N. J. Eq.* 371, 373 (*E. & A.* 1902), appeal dismissed 191 *U. S.* 558, 24 *S. Ct.* 844, 48 *L. Ed.* 302 (1903).

The court may designate as prosecutor of the proceedings, the Attorney-General, the county prosecutor, or any other person appointed by the court for that purpose. *Rule* 2:8-2(c); *Rule* 3:80-2, as amended November 10, 1949, *paragraph* (c). Such was the course of the proceedings below, the court appointing and designating Mr. Handler as prosecutor.

The defendants' questions involved are all adjective. They do not assert any deficiency in evidence as to the jury's determination of the facts, disputed or otherwise, either as to the events or as to the defendants' participation therein. And the evidence introduced at the trial paints a picture of violence and strife during the course of the protracted strike at the plaintiff's plant, with particular severity on April 7, 1952, the date of the occurrences leading to the convictions for contempt now before us. On that day a conflict began when persons who had entered the plaintiff's Eden plant to perform maintenance work attempted to cross the defendants' picket line in leaving. Stones, clubs and other improvised weapons were wielded or hurled against each other by the opposing groups; a telephone pole and a tree were thrown across the plant road; members of both groups were severely beaten; vehicles of the persons attempting to leave the plant were damaged by stones, and two were burned; and there was also evidence of damage to plant property. The details are unimportant, for the jury has determined the facts against the defendants and they have not appealed that aspect of the case against them. The portrayal above is designed merely to expose the gravity of the charges laid against the defendants.

■■ I. The initial question involved is whether defendants' attack (in the contempt proceedings) on the injunctive order which was issued in the company's civil suit and which they were alleged to have violated, should have prevailed. The only ground urged by them on this appeal in that respect is that the venue of the civil action was improperly laid in Hudson County, the *situs* of the plaintiff's property

being Morris County. We find no merit in the defendants' arguments in this respect. The civil action was a proceeding in equity in the Chancery Division of the Superior Court, properly triable in vicinage No. 1 (*Special Rule No. 5,* as amended March 11, 1949; *Special Rule No. 6,* as amended March 11, 1949 and June 7, 1951), and the duplicate pleadings therein were properly filed in Hudson County (*Special Rule No. 6, supra*). The Superior Court has original general jurisdiction throughout the State in all causes, *N. J. Const.* 1947, *Art. VI, Sec. III, par.* 2, and therefore had *jurisdiction* of the cause. The situation obtaining in this case is comparable to that exhibited in *Cape May and Schellenger's Landing R. R. Co. v. Johnson,* 35 *N. J. Eq.* 422 (*Ch.* 1882) where an order to show cause, with restraints, was granted in Newark against the City Council of the City of Cape May. It was held by the former Court of Chancery in that case, on subsequent proceedings in criminal contempt for violation of the restraining order, that the "* * * regularity, validity or correctness of the order contemned cannot be examined on this proceeding * * *" but must be respected until annulled by the proper authority (35 *N. J. Eq.,* at *p.* 423). *Cf. Cooper v. Cooper,* 103 *N. J. Eq.* 416, 420 (*Ch.* 1928); *Dietrick v. Dietrick,* 99 *N. J. Eq.* 711, 712 (*Ch.* 1926); *Warren v. Warren,* 92 *N. J. Eq.* 334, 339 (*Ch.* 1921); *Rigney v. Rigney,* 62 *N. J. Eq.* 8, 14 (*Ch.* 1901); *Forrest v. Price,* 52 *N. J. Eq.* 16, 23 (*Ch.* 1893), affirmed 53 *N. J. Eq.* 693 (*E. & A.* 1895); *State v. Clerk of Bergen,* 25 *N. J. L.* 209, 211 (*Sup. Ct.* 1855). See also *Annotation,* 12 *A. L. R. 2d,* at *pp.* 1107 *et seq.*

█ II. Defendants' second question involved is whether the venue of the criminal contempt order to show cause was improperly laid. Under the practice in the former Court of Chancery, criminal contempt proceedings were original and orders to show cause therein at one time were returnable only before the Chancellor. *In re Schachman,* 10 *N. J. Misc.* 809, 810 (*Ch.* 1932). *Rule* 128 (*d*) of the former Court of Chancery, however, was amended in 1938

to provide that applications to punish for civil or criminal contempt, and applications for orders and decrees therein, might be made to any vice-chancellor, to be heard by him without special order of reference, provided that such application could not be heard by the vice-chancellor who advised the order alleged to have been contemned. *Chancery Rule* 128 (*g*) provided that the orders "shall be made returnable at chambers in, or approximately most accessible to, the locality in which the causes of action arise" and established vicinages for applications and hearings, hearings to be had in those vicinages "as nearly as may be practicable."

It follows from the foregoing that under equity practice obtaining prior to the adoption of the *New Jersey Constitution of* 1947 the venue laid in these proceedings would not have been improper. Our present rules contain no limitation upon this course of procedure, but provide that if the substance of the charge is a violation of an order or judgment of the court, the judge who made the order or judgment is disqualified. *Rule* 2:8–2(*d*); *Rule* 3:80–2 (*e*).

The pertinent statutory provisions require the trial (on application to the court) to be before "a jury presided over by a judicial officer other than the one who issued" the injunctive order allegedly contemned, *N. J. S.* 2A:15–56, and provide that if imprisonment is a part of the sentence, the imprisonment may be "in the jail of the county *where the court is sitting*," (emphasis supplied), *N. J. S.* 2A:15–57. These statutory provisions constitute legislative recognition of the former equity practice in contempt proceedings and of the rules of this court. Clearly, the Legislature recognized that a trial for contempt may be had in a county other than that where the contempt occurred where, as here, the court which rendered the judgment allegedly contemned is one of statewide jurisdiction.

■ Venue "involves no more and no less than a personal privilege which may be lost by failure to assert it seasonably, by formal submission in a cause or by submission through conduct." 56 *Am. Jur., Venue, sec.* 40, *pp.* 44–45. *Cf.*

*Freeman v. Bee Machine Co.*, 319 *U. S.* 448, 454, 63 *S. Ct.*
1146, 87 *L. Ed.* 1509, 1514 (1943), rehearing denied 320
*U. S.* 809, 64 *S. Ct.* 27, 88 *L. Ed.* 489 (1942). Compare
*Wildes v. Mairs*, 6 *N. J. L.* 320 (*Sup. Ct.* 1796); *Thorn v.
Langue*, 122 *N. J. L.* 342, 346 (*Sup. Ct.* 1939).

We are of the opinion that the venue of these con-
tempt proceedings was properly laid, and that no error was
committed by making the order returnable in Essex County,
nor in conducting the trial there. Further, as to all the
defendants except Nobile, an objection to the venue was
waived by failure to assert the same prior to pleading to the
charge of contempt.

III. Defendants contend that the trial court
erred and deprived them of constitutional rights, in dis-
allowing their challenge to the array. Their asserted basis
for challenge was laid solely on the question of venue and
therefore their contentions in this respect are devoid of
merit. A challenge to the array is of common law origin.
It goes to the form and manner of making up the whole
panel, relating to the legality of drawing, selecting or
impaneling the array, or to a charge of partiality or default
of the sheriff or other officer who summoned the jury. *State
v. Carlino*, 99 *N. J. L.* 292 (*E. & A.* 1923); *Blackstone's
Commentaries* (*Browne's ed.* 1897), *pp.* 522–523; *II Tidd's
Practice*, (*3rd American from 9th London ed.* 1840), *pp.*
\*851–\*852; *Abbott's Civil Jury Trials* (*5th ed.* 1935), *sec.*
65, *pp.* 136–137).

Where a challenge relating to partiality of indi-
vidual members of the panel is desired, the method is a
challenge to the polls, *State v. Carlino, supra*; and where it
is asserted that an impartial jury may not be obtained in the
county where trial is to be had, a motion for change of
venue or for a foreign jury is the proper remedy, *State v.
Collins*, 2 *N. J.* 406, 411 (1949). These latter motions were
not resorted to by the defendants in this case.

IV. A further question involved is whether the trial
court erred in denying the defendants' motion for dismissal

at the close of the case for the prosecution. The defendants' motion was grounded solely on alleged lack of proof of service of the injunctive order contemned, or of lack of notice thereof. The record clearly shows the contrary. All the defendants appeared in the civil action in response to the order to show cause and obtained consecutive continuances of the scheduled hearing therein. Their contentions as to lack of notice in this respect are without merit. Since they assert no other deficiency in the proofs it is deemed unnecessary to recite the evidence supporting the convictions on the facts. The motion to dismiss was properly denied.

V. The remaining questions involved center about the trial court's charge.

The principal criticism pursued by the defendants is that the trial court erroneously denied several of their requests to charge, namely, Nos. 6, 9, 11, 12, 14, 15, 16, 17, 18 and 19. These requests related either to the burden and degree of proof or were designed to charge the jury, in effect, that the defendants and other members of the striking unions involved in the fracas were justified in violating the court's injunctive order in self-defense. There was a failure on the part of the defendants in this matter to comply with *Rule* 3 :51–1, which requires copies of requests to charge to be furnished to adverse parties, and the requests asserted matters entirely foreign to the facts adduced at the trial. Compare *Hodgson v. Pohl*, 9 *N. J.* 488, 492 (1952) ; *Seward v. Natural Gas Co.*, 8 *N. J.* 45, 52 (1951). So far as the requests related to the degree of proof, the general charge of the trial court was detailed and comprehensive and fully instructed the jury that in order to convict their duty was to find each of the defendants guilty beyond a reasonable doubt.

The defendants also assert error in the trial court's refusal to charge their requests Nos. 2 and 7. These requests sought a charge to the effect that admissions or statements of one defendant were not binding upon any other defendant. The trial court explicitly charged that

such testimony offered against any one of these defendants might not be considered by the jury as binding or as proof of the violation of the injuction on the part of any other defendant. It is axiomatic that where the substance of the request is adequately covered in the general instructions to the jury the trial court is not required further to instruct them in the particular language chosen by the party. Insofar as these requests called for cautionary instructions as to credibility of witnesses, the trial court likewise treated the subject with perspicuity in the general charge. *State v. Ellrich,* 10 *N. J.* 146, 154 (1952).

 Further error is asserted by the defendants against the trial court's refusal to charge their request No. 13 which was designed to emphasize the individuality of the several jurors. This request was properly refused. *State v. Blaine,* 104 *N. J. L.* 325, 328 (*E. & A.* 1928).

With respect to the instructions to the jury actually rendered by the trial court, the defendants assert error in other particulars.

 First they contend that it was error to charge that the plaintiff in the civil action had the duty to bring to the court's attention "* * * each and every violation of this Court's injunction, concerning which it had knowledge and that is what it did." The defendants contend that the quoted phrase constituted a specific instruction that the violations had in fact occurred. If this were so the matter was thoroughly covered in the trial court's detailed instructions to the jury relative to their duty to determine whether a violation had in fact occurred, and whether any defendant had committed a violation. The entire charge must be considered; a single sentence may not be extracted and construed without regard to the context of the complete charge. Viewed in this light, the entire charge in this case "was not such as to confuse or mislead the jury nor to convey to them an erroneous understanding of the legal principles to be applied." *State v. Ellrich, supra,* (10 *N. J.,* at *p.* 153).

 Second, the defendants assert error in that the trial

court instructed the jury "* * * You may find all of them (the defendants) guilty as charged, some of them guilty, and others not guilty or all of them guilty." Defendants contend that the trial court erroneously omitted the word "not" from the latter portion of this phrase, which they say should have been "or all of them not guilty," although they admit that previously the court had properly instructed the jury. The prosecutor contends that viewed as a whole the charge indicates no prejudicial error in this respect. *State v. Ellrich, supra.* We are satisfied that this is so in the present case.

Third, the defendants assert error in that portion of the charge wherein the trial court adverted to the statutory punishment for the contempts charged against them. The error alleged is that the trial court refused to amplify the instruction by indicating that punishment for offenses (contempts) after the first was more severe. It did not constitute error such as may have prejudiced any of these defendants in maintaining his or its defense upon the merits. *Rule* 1:2–19(b). *Cf. State v. Martin,* 102 N. J. L. 388, 396 (*E. & A.* 1926); *State v. Mosley,* 102 N. J. L. 94, 105–106 (*E. & A.* 1925); *State v. Martin,* 94 N. J. L. 139, 143–144 (*E. & A.* 1920).

Last, the defendants assert error in portions of the general charge which related to the court's recollection of the facts. We find no merit in this contention. The remarks adverted to did not stray from the realm of fair comment and the jury were sufficiently cautioned that their recollection of the facts alone should govern them in their deliberations.

For the reasons expressed in this opinion, we are of the opinion that the judgments of conviction of contempt should be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.