230 N.J. Super. 223 (1989)
553 A.2d 349
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER HUGHES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1988.
Decided January 25, 1989.
*224 Before Judges PRESSLER, O'BRIEN and SCALERA.
Jon Steiger argued the cause for appellant (Bonello, Moriarty & Steiger, attorneys; Jon Steiger, of counsel and on the brief).
Patricia Quelch, Assistant Prosecutor, argued the cause for respondent (John Kaye, Monmouth County Prosecutor, attorney; Mark P. Stalford, Assistant Prosecutor, of counsel; Richard E. Incremona, Assistant Prosecutor, on the letter brief).
*225 Carol M. Henderson, Deputy Attorney General, appeared amicus curiae (Cary Edwards, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The issue presented by this appeal arises out of the adjudicated overcrowding at the Monmouth County jail. See Monmouth Cty. Correctional Inst. Inmates v. Lanzaro, 595 F. Supp. 1417 (D.N.J. 1984), aff'd in part, mod. in part 834 F.2d 326 (3d Cir.1987). Because the federal district court set a maximum jail population of 344 inmates, later increased by consent order to 395 inmates, the Sheriff of Monmouth County determined that he would not accept new inmates sentenced to jail terms by the municipal courts forthwith upon their sentencing. He therefore circulated a memorandum, dated February 26, 1987, to all municipal police chiefs and all municipal court judges, prosecutors, court clerks, and other municipal officials. The memorandum advised that except for temporary mental health and domestic relations commitments which he would continue immediately to accept, all defendants sentenced to jail terms by the municipal courts would be accepted for commencement of service of their sentences only at such time as "room becomes available" and that these defendants would be given 24-hours notice of that time by their local police departments.
Defendant Walter Hughes was charged in the Neptune Township Municipal Court with a variety of traffic offenses including driving while on the revoked list. N.J.S.A. 39:3-40. Because he was then involved in an accident causing injury to another person, he was subject on conviction, in addition to other prescribed penalties, to a minimum mandatory 45-day jail term. N.J.S.A. 39:3-40(e). Defendant opted to plead guilty. He was sentenced to the mandatory 45-day jail term on April 15, 1987 and informed by the judge that service of the sentence would not commence immediately. There does not, however, *226 appear to have been a formally entered judicially-ordered stay of sentence. In any event, Hughes was not notified of his obligation to commence service of the sentence until some weeks thereafter, apparently on or around June 10, 1987. He then took the position that he was entitled to be credited with service time as of the date of imposition of the sentence and that since 45 days had already elapsed between the sentencing date and the notification to start serving it, he should be deemed to have completed its service. The municipal court, on a motion pursuant to R. 7:4-6(g) (correction or reduction of sentence) disagreed, and defendant appealed de novo to the Law Division. The Law Division, agreeing with the municipal court judge, ordered defendant to commence service of the 45-day sentence. Defendant appealed that order to this court, which, however, denied his motion for bail pending appeal. Consequently, defendant has already served his 45-day term in the Monmouth County jail.
Defendant raises a variety of challenges to the validity of the Sheriff's deferral memorandum and the court's apparent acquiescence therein, including state and federal constitutional claims and allegations of ultra vires action on the part of the Sheriff. Both the Monmouth County Prosecutor and the Attorney General, who appeared amicus curiae at our invitation,[1] urge us to dismiss the appeal on the ground of mootness. See R. 2:8-2. There is, of course, no doubt that the appeal is moot. Defendant does not and never has challenged either the adjudication of guilt, the imposition of the jail term, or its quantum. His only claim is that he should be deemed to have served the sentence prior to receiving notice to commence service in accordance with the Sheriff's memorandum. Since he has, however, already served the 45-day jail term in accordance with the memorandum, there is patently no remedy which can now be afforded him. Defendant does not suggest that his appeal is *227 not moot. He contends, however, that because of the public importance of the issues raised and their likelihood of recurrence, we should address them rather than dismissing the appeal. We opt, however, to dismiss the appeal. We recognize our discretion to reach the merits of an issue of public significance despite its mootness. See, e.g., Falcone v. De Furia, 103 N.J. 219, 226 (1986); Matter of Conroy, 98 N.J. 321, 342 (1985). We decline to do so here, however, for several reasons.
First, there is no case now before us whose resolution requires either determination of those issues or consideration of the even more complex question of prescribing a remedy if the Sheriff indeed had acted ultra vires. There may well be a legitimate question as to whether the Sheriff may conditionally refuse to accept inmates committed to his custody by judicial order where such refusal takes the form of an indefinite, open-ended deferral of acceptance. Moreover, the validity of the Sheriff's memorandum, at least in the sense of its capacity to dictate judicial action, is also subject to considerable doubt. But in the absence of an actual controversy requiring resolution, we conclude that we should not reach either the ultra vires issue or the issue of appropriate remedial action. These issues are more appropriately addressed in a proceeding to which the Sheriff and Commissioner of the Department of Corrections are parties and in which the Monmouth County Board of Freeholders has an opportunity to intervene or the capacity to be joined.
We also decline to adjudicate the issues here raised because of the paucity of the record. In this regard, we note not only the meager factual presentation of defendant's case[2] but also *228 the absence of facts regarding the actual implementation of the Sheriff's memorandum. Thus, this record does not disclose whether all municipal courts follow it in all cases and, if so, in what manner; how many defendants are affected thereby; what the shortest, average, mean, or longest deferral period is; what the ratio is, if any can be fairly ascertained, between the length of the sentence imposed and the length of the deferral period; what the form of order is, if any, by which deferral is effected;[3] or what, if any, the standards are for deferred acceptance, that is, whether defendants are accepted by date of conviction, by length of sentence, by seriousness or category of offense, or by any other criterion. Nor do we have any idea how the 24-hour period is actually enforced; who, if anyone, has the authority to adjust that notice period; under what standards it may be adjusted; and what, if any, repercussions ensue when a defendant is not then available for receipt of notice or service of the sentence. In sum, we have no factual basis at all which would enable us to address defendant's bare assertion that the deferral constitutes a substantial deprivation of a protected liberty interest without due process and that it also constitutes constitutionally proscribed cruel and unusual punishment. It may or may not constitute either in a particular case, in a class of cases, or in all cases. We cannot know until relevant facts are adduced and determined.
Having, however, expressed our general concern with the propriety of the Sheriff's action, we deem ourselves obliged to explain the basis of our views. First, we question the authority of the Sheriff to fail forthwith to comply with a judicial commitment order. We recognize the state constitutional status of the office of sheriff. See N.J. Const. (1947), Art. 7, § 2, ¶ 2. But the constitutional provision only addresses the manner of election and the term of office of county sheriffs. The duties and scope of authority of the office are those *229 historically attached thereto, as further explicated, prescribed and modified by statute and, if appropriate, executive order. See generally Worthington v. Fauver, 88 N.J. 183 (1982). Clearly, the care and custody of prisoners in the county jail and the management of the county jail are duties historically attached to the office. This is recognized by N.J.S.A. 30:8-17 and -19, which provide that unless the board of chosen freeholders of the county has by resolution assumed those powers, the sheriff "shall have the care, custody and control of the county jail or jails and all prisoners therein." But we seriously doubt that the scope of that authority encompasses a unilateral determination by the sheriff that he will indefinitely defer acceptance of inmates sentenced by a duly constituted court of competent jurisdiction. Rather, it appears to us that the sheriff is obliged strictly to comply with every judgment of a court committing an inmate to his custody and hence that he must accept that inmate forthwith or at least within the time frame prescribed by any applicable statute. We believe this to be fundamentally so because of the inherent force and effect of a judicial mandate, which no person upon whom an obligation is thereby imposed, including the sheriff, is at liberty to ignore or to unilaterally modify. Indeed, our entire legal system is premised upon that basic principle.
We also believe this perception to be reflected by the applicable statutes. We note, for example, that N.J.S.A. 30:8-1 imposes upon the sheriff the obligation to "receive from constables or other officers all persons apprehended by such constables or officers for offenses against this state." That statute goes on to provide that a sheriff failing to do so shall be guilty of a misdemeanor. N.J.S.A. 30:8-2 imposes a like obligation in respect of "all prisoners committed to his custody by authority of the United States," and further provides that his failure to do so shall subject him "to like penalties, forfeitures and actions as if such prisoners had been committed under *230 authority of this state." While there is no direct provision requiring the sheriff to receive and care for prisoners committed by authority of the state judiciary, it is obvious to us that such an omission, particularly in view of the second quoted proviso of N.J.S.A. 30:8-2, is attributable to the legislative recognition that that obligation is so essential and primary to the sheriff's office that it may be assumed without statement. Clearly, a county sheriff can have no less obligation in respect of a state judicial order than is imposed upon him in respect of persons arrested without any judicial order and persons committed to his custody by federal order. As a fair corollary of the rule that the sheriff must accept these inmates, he must also accept them forthwith and is consequently not at liberty unilaterally to decide he will accept them at some future unspecified time. Cf. In re Sabongy, 18 N.J. Super. 334 (Cty Ct. 1952); In re Benton, 10 N.J. Super. 595 (Cty Ct. 1950).[4] Moreover, it appears that the sheriff's obligation of forthwith acceptance comports with the principle that it is ordinarily the exclusive judicial prerogative to determine that service of a sentence should be stayed. See, e.g., State v. Hartye, 105 N.J. *231 411, 419 (1987); State v. Postal, 204 N.J. Super. 94 (Law Div. 1985).
We recognize, of course, that the Sheriff took the action he did here in an effort to comply with the order of the federal court which fixed a population maximum for the jail as a remedy for its overcrowding. We appreciate the exacerbated problems of jail and prison overcrowding which have reached crisis proportion in this state during the past decade. See also Union County Jail Inmates v. Di Buono, 713 F.2d 984, rehearing den. 718 F.2d 1247 (3d Cir.1983), cert. den. 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). The bona fides of the Sheriff's motive do not, however, dispose of the question of whether his unilateral deferral technique is valid or if he may unilaterally determine the mechanism for solving the problem or implementing the federal order.
In this regard, we note again that despite the general autonomy of the sheriff in respect of jail management, he is nevertheless a state official subject to the superseding sovereign authority of the State and hence is subject both to overriding executive and legislative prescriptions. See Worthington v. Fauver, supra. The jail itself, as Worthington makes clear, is not only a county institution but is also part of the State's overall complex of correctional facilities subject, as such, to a measure of control by the State Department of Corrections. Recognizing both the overcrowding problems then endemic in the penal system as a whole and the appropriateness of the general supervisory power of the Commissioner of the Department, the Legislature, by L. 1979, c. 472, enacted Article 9 of Chapter 8 of Title 30 (local government penal institutions), codified as N.J.S.A. 30:8-57 to -59 and implemented by N.J.A.C. 10A:31-5.1, et seq. This statute, in general terms, accords the Commissioner the right, should he find that a county jail fails to meet minimum standards, to order the ceasing of admission of all persons thereto and to assign new inmates to other specified *232 state or county penal facilities anywhere in the state.[5] It may be argued, therefore, that in respect of county jail overcrowding, the Legislature has committed the remedy to the Commissioner to the exclusion of unilateral action by a sheriff and has also thereby expressed its intention that the remedy be immediate confinement somewhere else, not delayed confinement. See n. 5, supra. In any event, the Commissioner's interest in the Monmouth County situation is evidenced both by his party status and active participation in the federal action and was recognized by the federal judge's directive that as to the adjudicated population maximum, the "State and County defendants [shall] take whatever means necessary to comply with this order." Monmouth Cty. Correctional Inst. Inmates v. Lanzaro, supra, 595 F. Supp. at 1440 (emphasis added). There is nothing in this record to suggest whether or not the Commissioner has since been in any way involved in the events immediately leading to the sheriff's memorandum here in issue or in the decision to resort to its open-ended deferral technique.
Finally, we point out that Commissioner's action pursuant to N.J.S.A. 30:8-57 to -59 and the implementing regulations does not appear to be the County's only recourse in resolving overcrowding. For example, the recent legislative response to the general overcrowding problem, and county jail overcrowding in particular, includes L. 1981, c. 498, codified as N.J.S.A. 30:8-16.5 to -16.12, which provides for a financial assistance program in the Department of Corrections for county jail construction and improvement, and L. 1981, c. 265, codified as N.J.S.A. 30:8-48.1, which expands the work-release program by authorizing the board of freeholders to house work-release inmates in a facility or institution operated by a nonprofit organization. There are undoubtedly other techniques available as well. The point we *233 make is simply that there is no apparently persuasive ex necessitate theory supporting the open-ended deferral technique.
We recognize that many competing interests require accommodation here. Society's interest in proper administration of the justice system requires that defendants serve the sentences imposed upon them by the court. Defendants have a legitimate interest in serving their sentences promptly and getting the payment of the debt they owe to society behind them without any indefinite, unrequested deferral thereof hanging over them like a Sword of Damocles. And both society and defendants have an interest in assuring that penal institutions are properly and fairly managed. There is obviously a significant discretion which must be afforded to county correctional authorities in the forging of this accommodation. The issue then is whether this discretion may be exercised in a manner which may fail properly to account for one of these interests and which may impinge upon legislative, executive, and judicial prerogatives. These are the questions which must be resolved and, in our view, can only be resolved upon a fair and full factual presentation by all interested parties.
The appeal is dismissed as moot.
NOTES
[1] The Public Defender declined a similar invitation.
[2] This record does not include the original judgment of conviction and commitment of the Neptune Municipal Court, precluding our ability to determine the precise basis on which the court originally deferred service of the sentence. Nor does it specify the time or manner of defendant's receipt of the notice to serve the sentence nor any other fact relating to his claim of a deprivation of liberty during that period.
[3] We do not know if the municipal court judges direct immediate commitment, or stay the commitment, or simply acquiesce informally.
[4] We note defendant's argument that should N.J.S.A. 2C:43-10(f) be deemed applicable, the sheriff would be legislatively obligated to accept these inmates within ten days after the sentence is imposed. N.J.S.A. 2C:43-10(f) provides that every person sentenced to the county workhouse or penitentiary shall be "transferred to and confined therein within 10 days after the sentence." The section does not expressly include the county jail, although it is captioned "Beginning sentences in county institutions." N.J.S.A. 2C:43-10(e) imposes upon the sheriff the obligation to deliver defendants sentenced to state prison to the custody of the Commissioner of the Department of Corrections within 15 days, a provision suspended by Executive Order. See Worthington v. Fauver, supra. Defendant thus argues that if county jails are deemed included by section (f), service of a sentence thereto may be deferred for no more than ten days. If county jails are not included therein, then service of the sentence must commence forthwith. Since both sections (e) and (f), as well as (g), expressly address only transfer of inmates already incarcerated, it does not appear that any of these sections speak to initial commencement of the sentence.
[5] Interestingly, anent the issue here, N.J.S.A. 30:8-58 requires the other assigned facility to accept the inmate within five days after the issuance of the Commissioner's order.