290 N.J. Super. 35 (1996)
674 A.2d 1006
E. CHRISTINE ROLNICK, PLAINTIFF-APPELLANT,
v.
JEROME J. ROLNICK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 26, 1996.
Decided April 25, 1996.
*38 Before Judges MICHELS, VILLANUEVA and KIMMELMAN.
Lampf, Lipkind, Prupis, Petrigrow & Labue, attorneys for appellant (Stephen H. Skoller, of counsel; Barry E. Moscowitz, on the brief).
Adler & Kleinman, attorneys for respondent (Toby G. Kleinman, of counsel; Nicholas J. Lochetta II, on the brief).
The opinion of the court was delivered by KIMMELMAN, J.A.D. (temporarily assigned).
This case has had an unfortunate and tortuous history while wending its way back and forth through the court system for the past ten years. Responsibility in no small degree must be ascribed to the less-than-forthright conduct of defendant to which we shall allude.
The parties were married in 1955, had three children, and were divorced in 1967. A property settlement agreement (agreement) of March 30, 1967, was incorporated in and made a part of the divorce decree. At that time, defendant had recently completed his medical residency and had embarked upon his career as a cardiologist in private practice.
According to the agreement, in addition to a fixed monthly amount of alimony and child support, defendant agreed to pay an additional sum by way of supplemental alimony equal to 20% of all income received by him in excess of $20,000 per year, the 20% to be allocated 55% thereof to plaintiff and 15% to each of the three children. Two years later, the parties entered into an amended agreement that defined the term "income" as the adjusted gross income of defendant less business and professional expenses as shown on his federal income tax return, but not including any income earned by his new spouse. The 20% of the excess over the adjusted gross income as defined would continue to be paid to plaintiff for herself and their children.
*39 For eighteen years, from the time of the divorce in 1967 until 1985, defendant made supplemental alimony payments to plaintiff of amounts between $2000 and $3000 per year purportedly in compliance with the agreement. Although the agreement gave plaintiff the right to inspect defendant's financial books and records every six months, she never exercised that right because, as she says, she trusted defendant.
In 1985, after defendant had warned plaintiff that he would, on his own accord, be reducing the regular monthly alimony payments, plaintiff, for the first time, moved in court to enforce the existing property settlement agreement. Plaintiff sought to examine defendant's financial books and records for the years 1984 and prior and also sought the appointment of an accountant to evaluate whether defendant had paid plaintiff the proper amount of supplemental alimony over the past eighteen years. When plaintiff made the application, defendant had unilaterally reduced the amount he was paying to plaintiff by way of regular monthly alimony with the intent to completely eliminate alimony payments on his own over the next four years. The motion judge at the time refused to appoint an accountant and denied plaintiff the right of discovery for the years prior to 1984, but did enforce the supplemental alimony provisions of the agreement for the year 1984 and succeeding years.
We note that, as ordered in connection with the hearing on plaintiff's initial application, defendant subsequently produced a copy of his 1984 tax return, but the "adjusted gross income" line was redacted, thus preventing plaintiff from determining whether she was paid the proper amount of supplemental alimony for 1984. Appeals by both parties from the motion judge's ruling were dismissed as interlocutory by order of this court entered September 10, 1987.
In 1988, a different motion judge ordered that a plenary hearing be held concerning the continued enforceability or modification of the supplemental alimony provision. In response to pre-hearing discovery requests, defendant produced only redacted copies of *40 income tax returns for 1984 through 1987, once again making it impossible for plaintiff to determine the sufficiency of the supplemental alimony being paid to her. Fortuitously for plaintiff, during the course of the 1991 hearing held to consider defendant's application to modify the supplemental alimony requirement, defendant inadvertently produced an unredacted copy of his 1984 tax return.
Following the plenary hearing, on July 9, 1991, the trial court ordered that the supplemental alimony provision of the agreement was a valid provision, but would be retroactively unenforceable from and after November 8, 1985, due to the changed circumstances of the parties. The trial court further ordered that, due to laches on her part, plaintiff was barred from seeking financial information from defendant for the years prior to 1984. The parties again lodged appeals with this court, resulting in a decision captioned Rolnick v. Rolnick, 262 N.J. Super. 343, 621 A.2d 37 (App.Div. 1993).
In Rolnick, we affirmed that provision of the July 9, 1991, order which discontinued the payment of supplemental alimony to plaintiff due to changed circumstances. We further affirmed an order of November 7, 1991, which reduced the basic monthly alimony rather than eliminate it as defendant had urged. Nevertheless, for the reasons expressed therein, and noting that "`[i]n a court of equity, ... the rule of laches is never applied in favor [of the perpetrator] of a carefully designed and studied scheme of fraud,'" id. at 364, 621 A.2d 37 (quoting Gallagher v. New England Mut. Life Ins. Co. of Boston, 19 N.J. 14, 23, 114 A.2d 857 (1955)), we did not view plaintiff as being barred by the doctrine of laches and precluded from conducting an inquiry into whether defendant had properly calculated and paid plaintiff the correct amount of supplemental alimony in accordance with the agreement as amended. Although we made no express finding, we did note that it appeared that the supplemental alimony payment made by defendant with respect to his 1984 income was $1974, whereas the unredacted 1984 tax return, when finally uncovered, revealed that *41 plaintiff should have received $4819. Rolnick, supra, 262 N.J. Super. at 361, 621 A.2d 37. Hence, as urged by plaintiff, the validity of the method used by defendant to calculate the required supplemental alimony payments for 1984 and for the years prior was called into question. We agreed with plaintiff's position and observed: "Here, defendant's alleged fraud would have prevented plaintiff from discovering that the bonus payment checks were too small." Id. at 364, 621 A.2d 37. We held:
[A] remand is warranted on the issue of defendant's fraud or unclean hands. On this remand, the trial court should focus on whether or not defendant fully disclosed and reported his income as such related to past payments.
Accordingly, except to remand the matter to the trial court for consideration of plaintiff's claims of fraud or unclean hands with respect to defendant's alleged failure to fully disclose and report his income, and the effect of such alleged failure upon her right to past bonus payments under the separation agreement, the order of July 9, 1991 is affirmed.
[Ibid.]
We did not limit the years to be covered at the remand hearing.
After the remand hearing, the trial court on December 21, 1994, issued a letter opinion, which states in pertinent part:
In this matter, since the divorce decree on June 1, 1967, both litigants have engaged in conduct which has frustrated an amiable and timely conclusion to their differences. Both parties have taken pains to ensure their rights. Both have availed themselves of the court's assistance in this protracted litigation. Neither party trusts the other and both, I am sure, suspects [sic] the other of underhanded prevarication and loathsome conduct.
Nevertheless, mere suspicion, conjecture, and supposition are not enough for this court to exercise its discretion and powers. Proper evidence from which reasonable and logical inferences may be drawn must be properly presented to the court before it may act.
After careful scrutinity [sic] of the records and dispassionate consideration of the arguments of all counsel, it is the judgment of this court that the plaintiff has failed to present sufficient evidence of equitable or legal fraud and has not established that the defendant invoked the assistance of the court with unclean hands.
In our view, the trial court's decision did not properly address the issues with which it was then confronted by the order of remand. Of concern to us is the trial court's failure to observe Rule 1:7-4, which requires:
In civil actions tried without a jury and on every motion decided by written orders that are appealable as of right, the court shall, by an opinion or memorandum *42 decision, either written or oral, find the facts and state its conclusions of law thereon....
The court's letter opinion fails to recite or find the presence or absence of facts sufficient to support the court's conclusions of law. As such, the December 21, 1994, letter opinion is of meager assistance to an appellate court. "The failure of the trial judge to make any findings ... complicates our review of this matter." Blaisdell Lumber Co. v. Horton, 242 N.J. Super. 98, 102, 575 A.2d 1386 (App.Div. 1990). In Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980), the Supreme Court clearly delineated the duty of a trial judge as follows:
In a non jury civil action, the role of the trial court at the conclusion of the trial is to find the facts and state conclusions of law. R. 1:7-4. Failure to perform that duty "constitutes a disservice to the litigants, the attorneys and the appellate court." Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4, 357 A.2d 55 (App.Div. 1976). Naked conclusions do not satisfy the purpose of R. 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions. See State v. Singletary, 165 N.J. Super. 421, 424-425, 398 A.2d 576 (App.Div. 1979), certif. den. 81 N.J. 50, 404 A.2d 1150 (1979); Kenwood, supra; Wertlake v. Wertlake, 137 N.J. Super. 476, 485-486, 349 A.2d 552 (App.Div. 1975). See generally Brochin and Sandler, Appellate Review of Facts in New Jersey, Jury and Non-Jury Cases, 12 Rutgers L.Rev. 482 (1957); Conford, Findings of Facts and Conclusions of Law, 92 N.J.L.J. 225 (1969).
An appellate court is directed to be deferential to the findings of fact made by the trial court and to uphold the factual findings as long as they are "supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974). Unfortunately, the trial court here has failed to make any findings upon which we might bestow our deference. Such is the plain purpose behind the requirement contained in Rule 1:7-4 as well as Rule 2:5-1(b), which requires the trial judge upon the filing of a notice of appeal to file an opinion stating findings of fact and conclusions of law where that was not done at the conclusion of the matter under appeal. See Martin Glennon, Inc. v. First Fidelity Bank, N.A., 279 N.J. Super. 48, 52, 652 A.2d 199 (App.Div.), certif. granted, 141 N.J. 95, 660 A.2d 1194, certif. denied, 141 N.J. 95, 660 A.2d 1194, and appeal dismissed, 142 N.J. 510, 665 A.2d 1104 *43 (1995). Under these circumstances, the trial court's naked legal conclusions will be ignored and will be set aside. See Curtis, supra, 83 N.J. at 570, 417 A.2d 15.
From our review of the record, it would appear that defendant or his accountant or both have either wilfully concealed or intentionally destroyed tax returns and financial information, knowing the same to be highly relevant and of crucial importance to this litigation. As early as September 1985, defendant knew from papers personally served upon him that plaintiff was making application to the court for the appointment of an accountant to examine his records for the past eighteen years in order to ascertain the accuracy of the $2000 to $3000 per year paid by defendant as the supplemental alimony required to be paid according to the 1967 agreement as amended. Defendant has testified that he usually retained tax returns for five or six years before destroying them. Hence, in 1985, in accordance with his customary practice, he would have had available tax returns dating back to 1979. That the returns were pertinent and highly relevant to the ongoing proceeding was known to defendant, and he should have preserved the same even in the absence of a court order to that effect. See Hirsch v. General Motors Corp., 266 N.J. Super. 222, 239, 628 A.2d 1108 (Law Div. 1993).
Defendant also knew from Rolnick, supra, issued February 18, 1993, that his prior tax returns were to be made available for examination at the remand hearing. Plaintiff undoubtedly was stymied in the preparation and presentation of her case at the remand hearing by what would appear to be spoliation of evidentiary materials by defendant. Defendant's accountant, whom we expect would have maintained and preserved records in the normal course, likewise claims to have destroyed the needed records or placed them in dead storage. Plaintiff would hope that it is the latter case. In short, a court could well be entitled to indulge the inference that the evidence concealed or destroyed by defendant or his accountant or both would have been unfavorable to defendant's *44 position. Interchemical Corp. v. Uncas Printing & Finishing Co., 39 N.J. Super. 318, 328, 120 A.2d 880 (App.Div. 1956).
In view of defendant's destruction of the specific financial records in question, we are unable to fathom how the trial court at the remand hearing could justify its conclusion that plaintiff had failed to sustain her burden of proof to show that defendant had unclean hands and that he had not, over the years, made accurate payments of supplemental alimony. Seemingly ignored by all judges below was defendant's certification of January 6, 1986, submitted in response to plaintiff's initial application for the appointment of an accountant to examine defendant's financial records, wherein defendant admitted to making inaccurate supplemental alimony payments based upon his adjusted gross income. At that time, defendant certified that when the property settlement agreement was negotiated and signed in 1967, the parties never contemplated that his earnings in future years would ever amount to more than $30,000 or $35,000 per year, and, therefore, he had made payments of supplemental alimony over the years only in accordance with "what was anticipated" to be his future earnings and never on the basis of his actual adjusted gross income as called for by the 1967 agreement as amended. Perhaps that telling certification was never brought to the attention of the motion judges on later applications.
During his testimony at the remand hearing on October 18, 1994, defendant tried to back away from his January 6, 1986, certification when he admitted that the 1986 certification was not true but was just "words." He maintained that he made the supplemental alimony payments in whatever way he wanted. Whatever way it was that defendant chose, he admits that the amount he unilaterally chose to pay was not in conformity with the 1967 agreement as amended.
Clearly, defendant did not come into court with clean hands at the remand hearing. In fact, it appears that his inequitable conduct prevented him from ever having so-called "clean *45 hands" in this litigation. We must repeat and emphasize what we said in Rolnick, supra:
The basic equitable maxim of unclean hands is that "[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings." A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246, 66 A.2d 319 (1949); accord Johnson v. Johnson, 212 N.J. Super. 368, 384, 515 A.2d 255 (Ch.Div. 1986); Pollino v. Pollino, 39 N.J. Super. 294, 298-99, 121 A.2d 62 (Ch.Div. 1956). "In simple parlance, it merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511, 427 A.2d 1105 (1981). While "[u]sually applied to a plaintiff, this maxim means that a court of equity will refuse relief to [any] party who has acted in a manner contrary to the principles of equity." Johnson, supra, 212 N.J. Super. at 384, 515 A.2d 255.
The rule is that while general iniquitous conduct will not operate to bar plaintiff from relief by reason of unclean hands, iniquitous conduct relating to the particular matter or transaction to which judicial protection is sought will operate to bar relief. See 1 Herr, Marriage, Divorce and Separation (1938), § 149[.] Where the relief sought by the plaintiff is the result of his own wrongdoing, where the unclean hands of the plaintiff [have] infected the very subject matter in litigation, the plaintiff is barred from relief in a court of equity. [Pollino, supra, 39 N.J. Super. at 299, 121 A.2d 62].

See also Feldman v. Urban Commercial, Inc., 78 N.J. Super. 520, 533, 189 A.2d 467 (Ch.Div. 1963), aff'd, 87 N.J. Super. 391, 209 A.2d 640 (App.Div. 1965). Moreover:
A court of equity can never allow itself to become an instrument of injustice. Associated East Mortgage Co. v. Young, 163 N.J. Super. 315, 330, 394 A.2d 899 (Ch.Div. 1978)[.] [N]or will equity allow any wrongdoer to enrich himself as a result of his own criminal acts. Jackson v. Prudential Ins. Co. of America, 106 N.J. Super. 61, 68, 254 A.2d 141 (Law Div. 1969). In this respect, equity follows the common law precept that no one shall be allowed to benefit by his own wrongdoing. Neiman v. Hurff, 11 N.J. 55, 60, 93 A.2d 345 (1952). Thus, where the bad faith, fraud or unconscionable acts of a petitioner form the basis of his lawsuit, equity will deny him its remedies. Goodwin Motor Corp. v. Mercedes-Benz of N.A., Inc., 172 N.J. Super. 263, 411 A.2d 1144 (App.Div. 1980). [Sheridan v. Sheridan, 247 N.J. Super. 552, 556, 589 A.2d 1067 (Ch.Div. 1990)].

See also Pollino, supra, 39 N.J. Super. at 304, 121 A.2d 62.
[262 N.J. Super. at 361-62, 621 A.2d 37.]
Defendant's conduct in destroying crucial records germane to the proceedings under review strikes at the heart of the integrity of the judicial process. The property settlement agreement, dated March 30, 1967, was incorporated in the judgment of divorce. Defendant had no right thereafter to unilaterally disregard the terms thereof and then to destroy evidentiary material in *46 order to cover-up his blatant disregard of the judgment. His conduct in so doing was clearly contumacious. See Whippany Paperboard Co. v. Local No. 301, 11 N.J. 153, 165, 93 A.2d 349 (1952); State v. Hughes, 230 N.J. Super. 223, 229, 553 A.2d 349 (App.Div. 1989); Sarner v. Sarner, 45 N.J. Super. 216, 221-22, 132 A.2d 28 (App.Div.), certif. denied, 25 N.J. 103, 135 A.2d 59 (1957); Clarke v. Brown, 101 N.J. Super. 404, 411-12, 244 A.2d 514 (Law Div. 1968). The general rule is succinctly set forth in West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 141 A.2d 782 (1958), as follows:
There can be no doubt as to the quality and integrity of the agreement embodied in the decree nisi; it was a property settlement that to all intents and purposes merged in the decree itself.... "A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, * * *." Fayerweather v. Ritch, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904).... "Rights established by the judgments of judicial tribunals are generally regarded as resting upon the firmest foundations, and this, mainly, because of the confidence reposed in their inviolability." Cleveland Leader Printing Co. v. Green, 52 Ohio St. 487, 40 N.E. 201 (Sup.Ct. 1895).
[Id. at 149-50, 141 A.2d 782.]
Defendant was duty bound to seek formal modification of the judgment, if he was so disposed, rather than take the law into his own hands. His failure to so do and his unilateral actions have been calculated to make a mockery of our system of justice in order to suit his personal predilections. He has succeeded thus far.
As indicated above, plaintiff and her counsel were able to uncover an unredacted copy of defendant's 1984 income tax return. That return, according to our review, showed an adjusted income of $64,037. Mathematically, there was an excess of $44,037 over the basic reserved income of $20,000. Since the three children of the marriage were emancipated at that time, plaintiff was entitled to 55% of 20% (11%) of such excess, or $4844. Plaintiff was only paid $1974, which indicates a net adjusted gross income substantially less than that shown on the tax return. That alone should have raised a red flag to alert the trial court.
*47 Additionally, the sale in 1984 by defendant and his second wife of their interest in Wayjer, Inc., a Maaco auto-painting franchise, was not reported at all in their 1984 tax return. Defendant was involved in this business even though it was in his second wife's name. Rolnick, supra, 262 N.J. Super. at 358, 621 A.2d 37. Defendant's accountant admitted in sworn testimony that the sale for $175,000 was not then reported to the Internal Revenue Service. To date, the profit on the Wayjer sale, and we are advised that it was substantial, has never been reported to the Internal Revenue Service. It would appear that plaintiff would be entitled to have some or all of the Wayjer profit included in the calculation made to determine the amount of supplemental alimony to which she was entitled. Inexplicably, the proper payment due plaintiff based upon defendant's actual 1984 adjusted gross income and the absence of the Wayjer proceeds from the tax return were key factors neither addressed nor considered by the trial court at the remand hearing.
For the reasons expressed, we must again remand this matter to the trial court with these instructions:
(1) The trial court shall address plaintiff's claims of fraud and unclean hands which might have barred defendant's requests for equitable relief and, by reason thereof, whether or not defendant was entitled to have sought a modification of regular monthly alimony payments and elimination of the supplemental alimony obligation.[1] The trial court should also focus on whether defendant fully disclosed and reported his income with respect to the sufficiency of past supplemental alimony payments. Rolnick, supra, 262 N.J. Super. at 360-61, 621 A.2d 37.
(2) The trial court should consider whether defendant or his accountant spoliated evidence and, if so, whether any sanctions, *48 costs, or other remedies are justified. See R. 4:23-2(b); R. 4:23-4; Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 514-15, 655 A.2d 1368 (1995); Interchemical Corp., supra; Hirsch, supra.
(3) The trial court shall consider the appointment of an accountant or fiscal agent to assist the court in securing and examining financial books and records of or pertaining to defendant and his expenditures and acquisitions of property and assets during the years in question. The accountant or fiscal agent, if so appointed, shall have the right to interrogate defendant and his accountant for such purposes. All reasonable fees, costs, and expenses of the accountant or fiscal agent shall be assessed against defendant.
(4) Plaintiff's reasonable counsel fees, costs, and expenses, both incurred in connection with the first hearing held on remand from this court and to be further incurred with respect to the remand hearing now ordered, shall be assessed against defendant. R. 4:42-9(a)(1).
The foregoing instructions are not intended to restrict or limit the trial court in taking whatever action it may deem reasonable and necessary to arrive at a fair and just determination of this matter.
This matter is remanded, as aforesaid. The assignment judge of the vicinage should assign this matter to a judge other than the judge who presided over the original remand hearing. We do not retain jurisdiction.[2]
NOTES
[1] Our prior affirmance of the reduction of regular monthly alimony payments and elimination of the supplemental alimony obligation after 1985 was made without the knowledge of defendant's destruction of pertinent financial records which has now come to light.
[2] The Clerk of this Court is directed to furnish a copy of this opinion to the District Director of the Internal Revenue Service and to the Director of the New Jersey Division of Taxation for their review and appropriate action.