WEST JERSEY TITLE AND GUARANTY COMPANY, A COR-
PORATION OF THE STATE OF NEW JERSEY, PLAIN-
TIFF-RESPONDENT, v. INDUSTRIAL TRUST COMPANY
AND WILLIAM H. SCOTT, Jr., EXECUTORS OF THE
ESTATE OF WILLIAM H. SCOTT, Sr., DECEASED, DE-
FENDANTS-RESPONDENTS, AND ANNA MAE SCOTT,
DEFENDANT-APPELLANT, AND MARY E. SCOTT, DE-
FENDANT.

Argued April 1, 1958—Decided May 26, 1958.

*Mr. Frank E. Vittori* argued the cause for the defendant-appellant, Anna Mae Scott.

*Mr. Grover C. Richman, Jr.,* argued the cause for the defendants-respondents Industrial Trust Company and William H. Scott, Jr., executors of the Estate of William H. Scott, Sr., deceased (*Messrs. Richman & Berry,* attorneys).

The opinion of the court was delivered by

HEHER, J. A final decree of divorce for desertion entered October 29, 1947 in the then Court of Chancery of New Jersey dissolved the marriage between the appellant here, Anna Mae Scott, the petitioner for divorce, and William H. Scott, Sr. The decree *nisi,* made July 28, 1947, approved as "fair and equitable," and more advantageous to

the petitioner "than would a provision herein by way of alimony," an agreement between the parties providing, *inter alia,* that the "use and possession" of the lands and dwelling in their "joint" ownership known as 134 Penn Avenue in Collingswood, New Jersey, "shall be the sole right of the petitioner during the term of her natural life, and that upon this decree becoming final, they will join in a deed of conveyance to themselves as joint tenants subject to the petitioner's right to exclusive possession of the premises during her life as aforesaid"; and that "the defendant will pay all taxes on said premises and will maintain fire and supplemental insurance in an amount sufficient to protect the value thereof."

William H. Scott, Sr. died March 16, 1955. The stipulated conveyance of the lands to the divorced couple as joint tenants had not been made, but Anna Mae Scott had remained in possession of the lands in accordance with the agreement approved by the decree *nisi*; and there is no evidence, either direct or circumstantial, of a consensual modification of the agreement. The failure to make a formal conveyance was undoubtedly due to the inadvertence and oversight of counsel; each relied on the other to draft the instrument until it was lost to memory. And the parties themselves relied on counsel for the doing of whatever was necessary to perfect the arrangement. There is no contention *contra,* save as a matter of purely speculative inference, of which more hereafter.

Apparently unaware of the existence or the force and effect of the agreement thus made an integral part of the decree *nisi,* the executors of the deceased William H. Scott, Sr. claimed a half interest in the lands in fee, and the tenant in possession, Anna Mae Scott, although insisting that the full fee simple was hers by right of survivorship, joined with the executors in an agreement to sell and convey the property on the advice of counsel who was not then cognizant of the property settlement thus merged in the decree *nisi.* The sale was consummated but, the settlement provision having come to counsel's knowledge meanwhile, Anna Mae

Scott made demand for the proceeds of sale in their entirety, and the plaintiff, as the holder of the fund, thereupon brought this action in the nature of an interpleader for the litigation of the title, setting forth the claim of the defendant executors to one-half of the fund in the right of their testator as a tenant in common of the lands, and Anna Mae Scott's demand for the full proceeds of sale by right of survivorship.

The defendant Anna Mae Scott interposed a cross-claim against the executors of her former spouse asserting a joint tenancy and survivorship and demanding judgment for the "entire sum" in plaintiff's possession, less such costs and counsel fees as may be awarded to it by the court.

The Superior Court found that the cited provision of the decree *nisi* "reflected an apparent agreement orally arrived at and never reduced to writing by and between [the] decedent and his wife, Anna Mae, that upon the decree becoming final they would join in a deed of conveyance to themselves as joint tenants, subject to Anna Mae Scott's right to exclusive possession of the premises during her life," but "such a deed was never drawn, or directed to be drawn." Recourse was had to the principle that equity "aid[s] the vigilant and not those that slumber on their rights," and "has a reluctance to deal with any demand that might be stale"; and these findings were made: "The decree is not self-executing * * *. The decree called for the parties to do something. They did nothing. Certainly Mrs. Anna Mae Scott did nothing to accomplish the provision which called for a deed unto herself and her husband as joint tenants. * * * None of us here know because there is no testimony as to what passed between husband and wife after their divorce, whether he, in some way, satisfied her with money, or in other ways, not to press her right to a joint tenancy deed; or perhaps she was not at all interested"; "There was both knowledge here and delay, under our cases"; there "has been lost, due to the death of the decedent, such testimony as might have thrown a brighter light upon the whole arrangement between the parties, and

in the interval between the pre-final decree and the final decree eight and a half years ago, and the present time," and the court "is without the benefit of the memory of that person whose knowledge of material facts would have helped," citing *Lutjen v. Lutjen,* 64 *N. J. Eq.* 773 (*E. & A.* 1902), and so the "equitable principle of laches applies." And it was held that the doctrine of waiver is also relevant, in that Anna Mae Scott, "possessed of a knowledge of her rights conferred by law, * * * forebore to do something, namely, to get the deed to which the decree refers, and in fact did something else: entered into a formal agreement of sale of her half interest, * * * with apparent knowledge of her right," supported in some measure by "what the executors have done, both in the expenditure of energy and time, and money," in reliance on the record title. And, finally, relief was declared barred by an equitable estoppel grounded in the principle that "a person shall not be allowed to repudiate an act done, or position taken, where that course would work injustice to another who, having the right to do so, has relied upon the act done or position taken," citing *New Jersey Suburban Water Co. v. Harrison,* 122 *N. J. L.* 189 (*E. & A.* 1939), an estoppel that "resides in Mrs. Scott's silence and acquiescence, and thereby permitting the executors to rely upon the record title: that the decedent died with half of 134 Penn Avenue vested in him; [s]he did nothing to dispel this well-grounded opinion and judgment on the part of the executors, but actively joined in the agreement to sell, the sale and division of the proceeds, and the deed."

There was judgment accordingly; the fund was ordered distributed on the basis of a tenancy in common; and we certified, *sua sponte,* the appeal of the defendant Anna Mae Scott to the Appellate Division of the Superior Court.

■■ There can be no doubt as to the quality and integrity of the agreement embodied in the decree *nisi;* it was a property settlement that to all intents and purposes merged in the decree itself, amenable to the equitable remedy of specific performance for the effectuation of the right or

other remedial process. The decree established by definitive judicial action the respective estates and interests of the spouses in the lands upon the dissolution of the marriage. "A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, * * *." *Fayerweather v. Ritch,* 195 *U. S.* 276, 25 *S. Ct.* 58, 49 *L. Ed.* 193 (1904). A judgment is a "security of record"; a suit on a judgment may be nothing more than "the case of an ordinary right of property sought to be enforced." *Provident Savings Life Assurance Society v. Ford,* 114 *U. S.* 635, 5 *S. Ct.* 1104, 29 *L. Ed.* 261 (1884). A judgment ordinarily establishes the existence of the right; it is an affirmation in regard to the matters submitted to the court for decision; the first and most obvious consequence of a judgment is that it establishes an indisputable obligation and confers upon the successful party the right to issue execution or other process of the court for its enforcement. Yet this is not an integral part of the judgment. The judgment is merely the affirmation of a liability. The right to use the process of the court for its enforcement is a consequence which the law attaches to it. *Black on Judgments* [1891] §§ 1, 4. "Rights established by the judgments of judicial tribunals are generally regarded as resting upon the firmest foundations, and this, mainly, because of the confidence reposed in their inviolability." *Cleveland Leader Printing Co. v. Green,* 52 *Ohio St.* 487, 40 *N. E.* 201 (*Sup. Ct.* 1895). Distinctions have been made between judgments at law and decrees in equity, but they have no significance in this context.

 And the agreement thus judicially established may be specifically enforced in equity. A court of equity has jurisdiction ancillary to an original cause or proceeding in the same court, whether at law or in equity, "to secure or preserve the fruits and advantages of a judgment or decree rendered therein * * *. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one." *Local Loan Co. v. Hunt,* 292 *U. S.* 234, 54 *S. Ct.* 695, 78 *L. Ed.* 1230, 93 *A. L. R.* 195 (1934).

The proceeding being ancillary and dependent, to perfect or effectuate an earlier judgment, the jurisdiction of the court follows that of the original cause. "Amongst the original and undoubted powers of a court of equity is that of entertaining a bill filed for enforcing and carrying into effect a decree of the same, or of a different court, as the exigencies of the case, or the interests of the parties may require." *Shields v. Thomas,* 18 *How.* 253, 15 *L. Ed.* 368 (1855). And see *Walkley v. Muscatine,* 6 *Wall.* 481, 18 *L. Ed.* 930 (1867); also *Pomeroy's Equity Jurisprudence* (*5th ed.*) § 1402.

Equity has had, in New Jersey, exclusive jurisdiction over contracts between husband and wife, and their specific enforcement. *Woodruff v. Clark & Apgar,* 42 *N. J. L.* 198 (*Sup. Ct.* 1880); *Dennison v. Dennison,* 98 *N. J. Eq.* 230 (*Ch.* 1925), affirmed 99 *N. J. Eq.* 883 (*E. & A.* 1926). And equity may enforce an agreement to convey lands in lieu of maintenance. *Calame v. Calame,* 24 *N. J. Eq.* 440 (*Ch.* 1874), affirmed 25 *N. J. Eq.* 548 (*E. & A.* 1874).

The doctrines of laches, waiver and estoppel are irrelevant. We are not concerned here with a mere inchoate act or interest that does not ripen into a vested estate until certain preconditions have been fulfilled. The judicially-affirmed agreement provided for a life estate in the lands to Anna Mae Scott and a conveyance of the fee to her and her then spouse as joint tenants upon the entry of the final decree of divorce, and thus a tenancy having one and the same interest and held by one and the same individual possession and the consequent right of survivorship, rather than a tenancy in common; and it would do violence to the intent of the parties and the judgment formulated and affirmed in the decree *nisi* to hold that the omission of a formal conveyance nullified the judicially-approved transfer of the property and defeated the decretal provision for maintenance.

It is said in argument that only the vigilant may have the aid of equity, not those who "sleep on their rights"; that laches operates as a bar "if by the delay the defense

has either through death or inability to remember lost the benefit of important witnesses"; and that due to "the great lapse of time and the death of Mr. Scott, the executors are now deprived of the benefit of his testimony to show whether or not he in some way satisfied his former wife not to press her right to a joint tenancy in the property." And an estoppel is asserted on these grounds: "By her silence and acquiescence she has permitted the executors to assume that the decedent died vested with a one-half interest therein; she did nothing to dispel this well-grounded belief, but on the contrary, actively joined in an agreement to sell the property and divide the proceeds equally, joined in the deed to the property, and approved the settlement statement showing an equal division of the proceeds," and "In the meantime, by her inaction and by her actions, she caused the executors to do and perform acts that they were not obligated to do, and to pay taxes on decedent's interest in said lands," and she "misled the executors to their detriment," and so, it would seem to be reasoned, the decedent's estate should benefit at the expense of the provision for maintenance made by the decedent for her.

These are untenable considerations. It was equally the duty of the now deceased party to the agreement to arrange for the stipulated conveyance; and, if there had been a later modification of the undertaking, it was incumbent on him to make that known by a proceeding directed to the amendment of the solemnly-decreed compact for maintenance.

■■ While a waiver may operate as an estoppel *in pais*, they are not convertible terms. "Waiver" is the intentional relinquishment of a known right. It is a voluntary act, "and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." *Geo. F. Malcolm, Inc. v. Burlington City Loan and Trust Co.*, 115 *N. J. Eq.* 227 (*Ch.* 1934). It is requisite to waiver of a legal right that there be "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part"; "A waiver, to be

operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition." *Aron v. Rialto Realty Co.,* 100 *N. J. Eq.* 513 (*Ch.* 1927), affirmed 102 *N. J. Eq.* 331 (*E. & A.* 1928). "Waiver" presupposes a full knowledge of the right and an intentional surrender; waiver cannot be predicated on consent given under a mistake of fact. And there is a distinction, in respect of the requirement of consideration, between formal and substantial rights; but it has no significance here.

Estoppel *in pais* is a preclusion by law against speaking contrary to one's own act or deed; one may not take a position inconsistent with that previously assumed and intended to influence the conduct of another, if such repudiation "would not be responsive to the demands of justice and good conscience," in that it would work prejudice and injury to the other. *New Jersey Suburban Water Co. v. Harrison, supra.*

And laches involves more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party. *Hinners v. Banville,* 114 *N. J. Eq.* 348 (*E. & A.* 1933).

There is no basis whatever for a finding of prejudice by the delay in the conveyance of the legal title. The offered hypothesis of a modification of the settlement is purely conjectural, devoid of even a scintilla of supporting evidence. Titles and the judgments affirming titles are not so readily set at naught. The judicially-ratified agreement vested in Anna Mae Scott an equitable estate in the lands that could not be defeated by a failure to acquire the bare legal title. In all cases of equitable estates, as distinguished from lesser interests, whether in fee, for life, or for years, "they are in equity what legal estates are in law; the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is * * * no more than the shadow always following the equitable estate, which is the substance,

except where there is a purchaser for value and without notice who has acquired the legal estate. This principle of a double right, one legal and the other equitable, is not confined to equitable *estates,* properly so called; it is the essential characteristic of every kind of equitable interest inferior to estates." 1 *Pomeroy's Equity Jurisprudence (5th ed.)* § 147.

There was no waiver here; and there are no countervailing equities.

It may well be that since Anna Mae Scott joined in the sale of the subject premises, she is fairly chargeable, as a benefit to her, with the expenses actually incurred by the executors in making the sale and the conveyance. We are unable on the present record to consider the question.

The judgment is accordingly reversed; and the cause is remanded for further proceedings not inconsistent with this opinion.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.