**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3261-19

CENTRO INSPECTION
AGENCY, INC.,

      Plaintiff-Appellant,

v.

JAMES JAROSCHAK,
JENNIFER JAROSCHAK,
and VERITY SERVICES, LLC,

      Defendants-Respondents,

and

MARLENE KLEIN and
PETER DAUS,

      Defendants.

_____

Argued June 22, 2021 – Decided July 9, 2021

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000092-15.

Jan Alan Brody argued the cause for appellant (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC, attorneys; Jan Alan Brody and Christopher J. Buggy, of counsel and on the briefs).

Scott Montgomery Kelly argued the cause for respondents.

PER CURIAM

Plaintiff Centro Inspection Agency, Inc. appeals from an order entered by the Law Division on December 20, 2019, which denied its motion for entry of a final judgment against defendants James Jaroschak (James), Jennifer Jaroschak (Jennifer), and Verity Services, LLC (Verity).[1] Plaintiff also appeals from an order dated April 20, 2020, which denied its motion for reconsideration. We affirm.

## I.

We briefly summarize the relevant facts and procedural history. Plaintiff provides inspections of automobile mechanical systems, and Lawrence Centro (Lawrence) is the president and sole shareholder of the company. In August 2003, plaintiff hired James, who is Lawrence's nephew. By 2014, James had become a senior executive with the company.

---

[1] Marlene Klein and Peter Daus also were named as defendants in the complaint. However, the orders at issue do not affect them, and they are not participating in this appeal.

In October 2014, due to what Lawrence claimed was a "fabricated act of insubordination," plaintiff terminated James's employment. Lawrence alleged that while James was still an employee of the company, he took its customer list and certain confidential and proprietary information. James and his wife Jennifer thereafter formed Verity and began to compete with plaintiff, allegedly using the information James had "misappropriated."

Plaintiff brought suit against defendants seeking, among other relief, a permanent injunction restraining them from using its trade secrets and confidential information. Plaintiff also sought compensatory damages and attorney's fees. On July 13, 2017, the trial court signed and filed a stipulation of settlement resolving plaintiff's claims against defendants.

The settlement provided that defendants shall pay plaintiff $150,000 over eight years, with interest at a rate of 1.5% per annum, in ninety-six equal monthly payments of $1659.10. According to the stipulation, the payments were due by the first day of every month, beginning on August 1, 2017. The settlement also stated that:

> 2. [Defendants] shall have a [fifteen] day grace period to make their monthly payments. If plaintiff fails to receive a monthly payment by the [fifteenth] day of any month, [defendants] shall be in default.

A-3261-19

3. If [defendants] are in default, plaintiff shall be entitled to the entry of a judgment in its favor and against [defendants], jointly and severally, for the sum of $500,000 less the total amount of their prior monthly payments that plaintiff has received, upon plaintiff's application by motion in this matter on notice to each of [defendants] by certified mail, return receipt requested, and ordinary mail.

In November 2019, plaintiff filed a motion alleging defendants were in default and sought the entry of a judgment against them, as provided by the agreement. In support of its motion, plaintiff submitted a certification from Lawrence, who stated that on October 17, 2019, he learned defendants' check for the monthly payment had been delivered to the post office on that date, which was two days after the date it was due.

Lawrence asserted that the check was dated October 14, 2019, and the printed stamp on the envelope was dated October 15, 2019. He said the United States Postal Service (USPS) had postmarked the envelope in Trenton that same day.

Lawrence stated that it is "common knowledge" that the USPS does not deliver ordinary mail on the same day it is mailed. He stated it "typically" takes two days (not counting Sundays) for an envelope mailed in Monmouth Beach (which is where Verity has its offices) to be delivered to Lincroft (where plaintiff's office is located). He claimed defendants knew the check would not

A-3261-19

be delivered on October 15, 2019, and they would be in default under the agreement.

Lawrence said that to confirm the "ordinary mail delivery time" from Monmouth Beach to Lincroft, he had placed envelopes addressed to plaintiff in the mailbox outside and inside the post office in Monmouth Beach. According to Lawrence, the USPS postmarked both letters in Trenton on October 28th, and the USPS delivered both letters to plaintiff's office in Lincroft on October 30th, two days after they were mailed.

Lawrence stated that after he learned of defendants' October 2019 default, he had plaintiff's staff review their prior payments to determine if any other defaults had occurred. He said he had been told there were at least four other late-payment defaults in 2019, in January, March, July, and August.

Lawrence asserted that defendants' failure to make the October 2019 payment by the date required was a default under the settlement agreement. He stated that pursuant to the agreement, plaintiff was entitled to a judgment of $500,000, less the payments previously made, which totaled $44,795.70. He asked the court to enter a judgment for $455,204.30.

Defendants opposed the motion. James provided a certification in which he denied that his employment with plaintiff ended due to a fabricated incident

of insubordination. He said he had argued with Lawrence during a business trip to Chicago, and thereafter Lawrence told him he could no longer work for plaintiff.

James stated that he then began his own business. He noted that Lawrence had accused him of competing with plaintiff and stealing its customer list, but he said he merely called customers with whom he had "a good working relationship." He noted that he had worked at plaintiff for eleven years and never signed a non-compete or confidentiality agreement.

James said he had resolved the litigation with plaintiff by entering into the settlement agreement and made the monthly payments for two and one-half years "without any notice or any issues." He noted that Lawrence had claimed in his certification there were four late payments in 2019, but Lawrence did not state when plaintiff actually received the payments.

James added that Lawrence failed to show plaintiff did not receive these payments on or before the 15th day of the month. He also submitted copies of documents showing that plaintiff had deposited all payments from January through November 2019 into its bank account.

James also stated that Lawrence typically waits until the end of the month to deposit the payments, and James had offered to have the payments deposited

6

directly into his account. He said Lawrence was a "vindictive man" who was using his wealth to punish him "for refusing to stay under his control in a dysfunctional workplace environment."

Lawrence filed a reply certification. He stated that the October 2019 payment had not been received at plaintiff's office until October 17, 2019, which was two days after it was due. He said defendants had not denied they made late payments in January, March, July, and August 2019.

Lawrence also asserted that plaintiff did not receive defendants' December 2019 payment by December 16, 2019. He disputed James' statements concerning the reasons plaintiff terminated his employment. He stated that the amount of the judgment should be reduced by defendants' November 2019 payment.

The motion judge heard oral argument and placed an oral decision on the record. The judge said she was denying the motion because plaintiff's application was supported by Lawrence's statements regarding the receipt of the October 2019 payment, but they were not based on his personal knowledge, as required by Rule 1:6-6.

The judge also found that, aside from the lack of proper evidentiary support for the allegations that defendants' October 2019 payment was late, the

7

record showed plaintiff previously had accepted late payments knowing the provisions of the settlement agreement. The judge found that plaintiff had waived its right to enforce the default arising from the late payment for October 2019. The judge memorialized her decision in an order dated December 20, 2019.

Plaintiff thereafter filed a motion for reconsideration and sought an evidentiary hearing on whether it waived defendants' defaults by accepting and depositing defendant's payments. In support of that motion, plaintiff submitted a certification from Lawrence, in which he stated that plaintiff did not intend to waive defendants' defaults by depositing the October and December 2019 payments.

In addition, plaintiff submitted certifications from its employees Howard Centro, Jr., and Trudi Della Fave-Swift. Howard stated that the USPS delivers mail to plaintiff's office in Lincroft every weekday between 2:00 p.m. and 3:00 p.m. by placing the mail on a table in the foyer of the office.

Howard said that on October 16, 2019, he picked up the mail from the table and defendants' payment was not in the mail that day. He stated that on October 17, 2019, he again picked up the mail from the table and it included

defendants' October 2019 payment. Trudi stated that the USPS had delivered defendants' December 2019 payment to plaintiff's office on December 16, 2019.

Defendants opposed the motion. In his certification, James disputed plaintiff's assertions regarding the untimely payments. He noted that according to Howard, the October 2019 payment was not delivered until the afternoon of October 17, 2019.

James stated that the payment was "posted" to Verity's bank account on October 18, 2019. According to James, this indicated plaintiff had received the payment earlier. He also stated that the December 2019 payment was "posted" to Verity's bank account on December 17, "which means it had to be deposited on December 16."

The judge heard oral argument and placed her decision on the record. The judge stated that plaintiff's application was "a classic case of an attempt at a second bite of the apple." The judge noted that plaintiff had submitted certifications with new factual assertions, which could have been provided with the initial motion. The judge decided it would be inappropriate to consider the new factual assertions.

The judge also found that reconsideration of her findings regarding waiver was not warranted. The judge stated that by accepting late payments and

9

pursuing default based on what plaintiff said was a late payment for October 2019, plaintiff was attempting "to have its cake and eat it, too, . . . ."

The judge entered an order dated April 20, 2020, denying plaintiff's motion. This appeal followed.

## II.

On appeal, plaintiff argues that the trial court erred by refusing to enter judgment against defendants. Plaintiff contends it presented the court with sufficient evidence to show it did not receive defendants' October 2019 payment by the date required by the settlement agreement. Plaintiff also contends the trial court erred by finding it waived its right to seek the final judgment based on defendants' untimely payment.

The summary judgment standard applies to a contested motion to enforce a settlement. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997). The court should grant the motion if the evidence before the court on the motion shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). Moreover, "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together will all legitimate inferences

10

therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

Thus, summary judgment should not be granted unless the evidence on a factual issue "is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). We apply this same standard on appeal. Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020).

Here, the settlement agreement provides that if plaintiff does not "receive" any monthly payment by the fifteenth day of the month, defendants "shall be in default." The judge found that in its initial motion, plaintiff did not present competent evidence establishing the date on which plaintiff received the October 2019 payment.

As stated previously, plaintiffs submitted a certification from Lawrence, in which he asserted that "it had come to his attention" that the October 2019 payment had been delivered to plaintiff's office on October 19th. Lawrence also stated that the printed stamp on the envelope was dated October 15th and postmarked in the Trenton post office that same day. He claimed it was "common knowledge" that the USPS does not delivery ordinary mail on the same day it is mailed.

11

Lawrence's statements as to the date on which the payment was received and the USPS's general delivery practices were not based on personal knowledge and did not set forth facts as to which he was competent to testify. R. 1:6-6. The record supports the motion judge's finding that in its initial motion, plaintiff failed to establish that it did not receive defendants' October 2019 payment within the time required by the agreement.

The record also supports the judge's finding that plaintiff waived its right to enforce the settlement agreement based on the alleged untimely October 2019 payment. A waiver "is the voluntary and intentional relinquishment of a known right." Knorr v. Smeal, 178 N.J. 169, 177 (2003) (citing W. Jersey Title & Guar. Co. v. Indus. Trust Co., 27 N.J. 144, 152 (1958)).

"An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Ibid. (citing W. Jersey Title, 27 N.J. at 153). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Ibid. (citing Merchs. Indem. Corp. of N.Y. v. Eggleston, 68 N.J. Super. 235, 254 (App. Div. 1961), aff'd, 37 N.J. 114 (1962)).

Here, the record shows that plaintiff had full knowledge of its right to receive defendants' monthly payments no later than the fifteenth day of any month, and that defendants would be in default in the event any monthly payments were not received by that date. Assuming, as Lawrence claimed, the payments for January, March, July, and August 2019 were not delivered to plaintiff until after the fifteenth day of those months, plaintiff waived his right to declare defendant in default based on the alleged untimely receipt of the October 2019 payment.

Defendants could reasonably assume that because plaintiff had not declared them in default, either the payments had been received in a timely manner, or plaintiff was waiving its right to declare defendants in default based on the late receipt of the October 2019 payment. There is sufficient evidence in the record to support the judge's determination plaintiff knowingly and intentionally waived its right to seek a final judgment based on the alleged late payment for October 2019, and an evidentiary hearing was not required.

Plaintiff argues, however, that the motion judge erred by finding a waiver because it received and deposited defendants' alleged late payments in January, March, July, and August of 2019. In support of this argument, plaintiff cites Shebar v. Sanyo Business Systems Corp., 111 N.J. 276 (1988). In that case, the

13

defendant employer argued that the plaintiff had waived his claims for wrongful termination by accepting certain checks his employers had given him. Id. at 290. The plaintiff argued, however, that he did not intend to waive his claims by accepting the checks. Id. at 291. He asserted that the employers never told him he would be waiving his rights if he accepted the checks. Ibid.

The Court noted that there was nothing in the record showing that the plaintiff's employers had a reasonable expectation that the plaintiff would be unequivocally and decisively waiving a legal right if he accepted the checks. Id. at 291-92. The Court held there was a genuine issue of material fact as to whether the plaintiff intended to waive his claims for wrongful termination. Id. at 292.

Here, plaintiff's reliance on Shebar is misplaced. The record shows plaintiff knew it had a right under the settlement agreement to receive defendants' monthly payments by the fifteenth date of the month in which the payments were due. Plaintiff claims defendants did not make the payments for January, March, July, and August of 2019 by the date required; however, plaintiff accepted and deposited the payments and did not declare defendants in default. We are convinced the evidence was sufficient to support the judge's

14

finding that plaintiff waived the right to declare defendants in default for the late arrival of the October 2019 payment.

We note that the judge never found that plaintiff waived its right to declare defendants in default for late payments other than the alleged late payment for October 2019. Here, plaintiff made a motion for entry of judgment based on the alleged untimely payment for October 2019, and the judge denied that motion. The judge never held plaintiff had waived its right to enforce the settlement agreement with regard to payments due after October 2019.

Accordingly, we conclude trial court did not err by denying plaintiff's motion for entry of judgment. Plaintiff failed to present competent evidence showing that defendants did not make the October 2019 payment in the time required by the agreement. Moreover, the evidence showed that plaintiff had accepted the allegedly late payments for January, March, July, and August of 2019, thereby waiving its right to declare a default regarding the alleged late payment for October 2019.

III.

Plaintiff further argues that the motion judge erred by denying its motion for reconsideration. Plaintiff contends the judge erred by refusing to consider the new evidence it had presented in support of its motion for judgment.

15

Plaintiff claims the new evidence showed plaintiff had not received the October and December 2019 payments by the fifteenth day of those months.

A motion for reconsideration is committed to the sound discretion of the trial court, which should "be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

> Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid.]

In the exercise of its sound discretion, the court may consider "new or additional evidence" that a litigant could not have provided on the first application. Ibid. However, "motion practice must come to an end at some point," and a motion for reconsideration should not be considered a means to take "repetitive bites at the apple . . . " Ibid.

In its initial motion, plaintiff failed to establish with competent evidence that it had not received defendants' October 2019 payment by the date required by the settlement agreement. In its reconsideration motion, plaintiff presented

16

new evidence to show that it had not received the payment by the prescribed date. Furthermore, plaintiff alleged that it did not receive defendants' December 2019 payment by the required date; however, the alleged late payment for December 2019 was not an issue in the first application.

We are convinced the motion judge did not mistakenly exercise her discretion by refusing to reconsider her earlier decision. As the judge aptly noted, defendant was seeking the proverbial second bite at the apple by presenting new evidence regarding the October 2019 payment that it could have presented with regard to the initial motion. Furthermore, plaintiff also was seeking judgment based on the December 2019 payment, which had not been the subject of the first motion. In addition, the judge properly found that her earlier decision had not been made on a palpably incorrect or irrational basis.

We have considered plaintiff's other contentions and conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                                  A-3261-19