**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0634-23

FRG-X-NJ2, LP,

    Plaintiff-Respondent,

v.

ROBMAR REALTY
ASSOCIATES,

    Defendant-Appellant.

_____

        Submitted January 23, 2025 – Decided January 31, 2025

        Before Judges Walcott-Henderson and Vinci.

        On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. LT-001895-22.

        Nieschmidt Law Office, attorney for appellant (Michael H. Nieschmidt, on the brief).

        A.Y. Strauss, LLC, attorneys for respondent (David S. Salhanick and Eva M. Thomas, on the brief).

PER CURIAM

In this commercial summary dispossess landlord-tenant action, defendant Robmar Realty Associates appeals from the October 11, 2023 judgment of possession entered by the Special Civil Part following a bench trial and the April 26, 2023 order denying its motion to transfer to the Civil Part. We affirm.

I.

We summarize the facts developed during the three-day bench trial conducted on August 4, September 28, and October 5, 2023. On February 2, 2007, defendant and 156 Algonquin Associates, L.L.C. (156 Algonquin), the previous owner of the property, entered a written lease (the Original Lease) for warehouse space located at 156 Algonquin Parkway, Whippany (the Leased Premises).

The Original Lease was for a five-year term and included an "option to extend" that provides in relevant part:

> [Defendant] is hereby given the right and privilege to extend the [t]erm of the within lease, for one . . . consecutive [five-]year period, . . . which renewal shall be upon the same terms and conditions as in this lease, except as [to base rent] . . . .
>
> . . . .
>
> The right, option, and privilege of [defendant] to renew this lease as hereinabove set forth is expressly conditioned upon [defendant] delivering to [156 Algonquin], in writing, by certified mail, return receipt

requested, twelve . . . months prior notice of its intention to renew, which notice shall be given to [156 Algonquin] by [defendant] no later than twelve . . . months prior to the date fixed for termination of the original term of this lease.

The Original Lease contains the following "non-waiver" provision:

The failure of [either party] to insist upon strict performance of any of the covenants or conditions of this lease, or to exercise any option of [either party] herein conferred in any one or more instances (except for [defendant's] option to renew, . . . which must be exercised strictly in accordance with its terms), shall not be construed as a waiver by [either party] of any of [their] rights or remedies in this lease, and shall not be construed as a waiver, relinquishment[,] or failure of any such covenants, conditions, or options, but the same shall be and remain in full force and effect.

The Original Lease also states, "[i]n the event of a sale of [156 Algonquin's] interest in the [Leased Premises], [156 Algonquin] shall have the right to transfer the cash security . . . to the [new landlord] . . . provided that . . . [defendant] is given written notice of such sale."

Defendant did not provide timely notice of its intention to renew the Original Lease. However, on September 17, 2012, defendant and 156 Algonquin executed an amendment to the Original Lease extending the lease term for an additional five-year period, from November 1, 2012, to October 31, 2017 (the "First Amendment"). Ira Bloom, 156 Algonquin's representative, testified the

decision to extend defendant's lease was a "business decision" based on the difficulty in reletting the Leased Premises to another tenant. According to Bloom, 156 Algonquin did not intend to waive the terms of the option to renew. Rather, it made the business decision to execute an amended lease with defendant and extend the lease term, although it was not contractually obligated to do so. According to Bloom, it was not unusual for 156 Algonquin to extend a lease even though the tenant forfeited its right to renew.

The First Amendment provides, defendant "shall have no further or additional right to extend or renew the term of this [l]ease" and "shall have no further option to extend the term of the [l]ease beyond" October 31, 2017. It also provides, "[t]he provisions of this First Amendment shall supersede any inconsistent provisions contained in the Original Lease," but "[a]ll other terms and conditions of the Original Lease . . . shall remain in full force and effect."

On October 26, 2017, defendant and 156 Algonquin executed a second amendment to the Original Lease (the "Second Amendment"), extending the lease term for an additional five-year period, until October 31, 2022 (the "Extension Term Expiration Date"). It similarly provides, "[t]he provisions of this Second Amendment shall supersede any inconsistent provisions contained

4

in the Original Lease," but "[a]ll other terms and conditions of the Original Lease . . . shall remain in full force and effect."

Unlike the First Amendment, the Second Amendment includes an Option to Extend granting defendant the right to extend the lease for an additional five-year period, provided defendant

> gives [156 Algonquin] written notice . . . of its exercise of its option not less than three hundred sixty-five (365) days immediately prior to the Extension Term Expiration Date, WITH TIME OF THE ESSENCE. In the event that [defendant] shall fail to deliver the Extended Term Notice within such time, it shall be conclusively deemed to mean that [defendant] has elected not to exercise said option, whereupon such option shall cease and terminate and be of no further force and effect.

The Option to Extend expressly states "[f]ailure of [defendant] to observe or comply with the terms of this Option to Extend shall render the option null and void."

Defendant failed to give 156 Algonquin written notice that it intended to exercise the option to renew by October 31, 2021. On November 8, 2021, after defendant's option to extend the lease expired by its express terms, 156 Algonquin entered a contract to sell the Leased Premises to plaintiff FRG-X-NJ2, LP. The sale was completed in December 2021. Plaintiff's representative,

5

Orry Michael, testified plaintiff notified defendant of the sale in December 2021 or January 2022.

On March 31, 2022, 214 days prior to the Extension Term Expiration Date, defendant attempted to exercise its option to extend in an email to plaintiff's real estate broker. On April 18, 2022, 196 days prior to the Extension Term Expiration Date, defendant delivered a notice of its intent to exercise the option to renew to plaintiff by certified mail. Plaintiff rejected both notices as untimely. On November 1, 2022, plaintiff served a notice to quit on defendant based on the expiration of the Second Amendment lease term.

Defendant refused to vacate the Leased Premises and became a holdover tenant. From November 1, 2022, until the entry of the judgment of possession, plaintiff delivered monthly account statements to defendant. In response, defendant delivered rent checks to plaintiff, which plaintiff did not cash. Michael testified that the process of sending statements to defendant was for purposes of asset management, and he referred to defendant as a "tenant" because it continued to occupy the Leased Premises.

On November 22, 2022, plaintiff filed this summary dispossess action in the Law Division, Special Civil Part, seeking a judgment of possession. Defendant moved to transfer the action to the Civil Part, arguing the case was

6

complex, required discovery, and involved issues not cognizable in a summary proceeding. On April 26, 2023, the court entered an order denying the motion to transfer supported by a written opinion. It determined the issue of waiver in this case is not overly complex as "courts have held that waiver is an issue of fact, and . . . a waiver defense can be heard" in a Special Civil Part summary dispossess action. The court found discovery was not required to adjudicate the waiver issues.

It also found the "defense of breach of implied duty of good faith and fair dealing . . . [did not] require transfer. Such . . . defense . . . can be heard by this court and does not require significant discovery . . . ." It concluded a transfer was not warranted under applicable case law, and it "[did] not find that any prejudice to [defendant] in denying transfer . . . would substantially outweigh the prejudice . . . [plaintiff] would face resulting from the delay caused by transfer."

The owner of defendant, Robert W. Kerekes, testified the Leased Premises was used to store a collection of thirty-three automobiles valued at approximately $15,000,000. He did not recall if he was represented by counsel when he executed the Original Lease but knew he did not have counsel for either the First or Second Amendments. Kerekes admitted he "never looked at the

A-0634-23

lease[s]" because his tenancy "just rolled over every time" and "that was it."  He did not recall whether he read or was aware of the time of the essence provision contained in the Second Amendment.

He claimed 156 Algonquin never previously required defendant provide written notice of renewal and believed the lease term "would be indefinite."  Due to his course of dealings with 156 Algonquin, he had no reason to believe the notice of renewal provision would be enforced.  Kerekes sent rent checks to plaintiff after expiration of the Second Amendment's lease term but believed plaintiff never cashed them.

On October 11, 2023, the court entered the judgment of possession supported by a thorough and well-reasoned oral opinion.  The court found Bloom testified credibly 156 Algonquin "never waived any clauses in the lease" and because there was not "a lot of competition for [the Leased Premises] at the time. . . . [T]hey made a business decision.  Even though they did[ not] have to, they made the decision to extend it."

The court found defendant failed to meet its burden to prove waiver, noting "it[ is] not sensible to assert waiver where years after the supposed waiver occurred[,] the parties executed a new agreement that contains a new notice requirement."  It rejected defendant's argument that 156 Algonquin waived the

8 <span>A-0634-23</span>

notice provision twice before the expiration of the Second Amendment's lease term because "[t]he first time and . . . really the only time it happened was when there was a [notice] clause in [the Original Lease]."

The court found the parties

> entered into a new agreement . . . that [provided] time was of the essence with . . . regard to the [365-]day notice. That put the commercial entity [defendant] on notice that time is of the essence." Plaintiff "admit[ted] . . . he did[ not] read the lease or the addendum in fifteen years and . . . he thought it would just . . . rollover indefinitely as long as he paid the rent.

The court concluded "[d]efendant has not come close to . . . meeting [its] burden [to prove waiver]." The "course of conduct . . . [does not] . . . justif[y] . . . either a law or an equity of waiver when . . . [d]efendant did[ not] even read any of the addendums . . . ." To rule otherwise "would [effectively] be rewriting a commercial . . . lease without a basis . . . in equity to the betterment of . . . one party over the other."

The court rejected defendant's claim that 156 Algonquin breached the implied duty of good faith and fair dealing because "certainly there[ has] been no showing of fraud, mistake, or accident." It found:

> [T]he record is simply devoid of evidence that there was anything that [156 Algonquin] did to . . . lull [defendant] into belief that . . . it had accepted the renewal notice, or . . . that [it] knew of [p]laintiff's

intent to exercise the option, yet engaged in subterfuge, or foot-dragging, or otherwise delaying [it] which . . . made it more difficult to . . . timely exercise that option. . . . [T]here[ is] no evidence of bad faith or other misconduct or . . . fraud . . . that warrants an application of that defense.

The court determined plaintiff's delivery of rent checks did not create a new tenancy because plaintiff did not deposit the checks. It found:

[A]cceptance of rent must be distinguished from receipt of rent. So, when a tenant makes a payment to the landlord[,] it will generally be deemed to have been received only. The payment may be considered to have been accepted if the landlord deposits it, which means cashes it or otherwise manifest[s] control inconsistent with simple receipt.

"There [was] no credible testimony that . . . [plaintiff] actually . . . cashed the checks," and receipt, as opposed to acceptance of the checks, did not create a new tenancy.

On appeal, defendant argues the court erred by denying the motion to transfer because "discovery was necessary and appropriate . . . to[] depose the individuals involved in the [s]ale, the individuals involved in the many years of the landlord/tenant relationship . . . and the credibility of Bloom and Michael." It also argues the court erred by finding: (1) defendant failed to prove waiver based on the "single ambiguous statement" by Kerekes that he "did not read the [l]ease or does not recall reading" it; (2) 156 Algonquin did not breach the

10

covenant of good faith and fair dealing; and (3) plaintiff did not revive defendant's tenancy by accepting rent payments, holding the rent as security, and identifying defendant as its tenant. For the first time on appeal, it also argues 156 Algonquin could not assign the lease to plaintiff without notice to defendant of altered terms.

II.

Having reviewed the record, we affirm substantially for the reasons set forth in the court's April 26, 2023 written opinion and October 11, 2023 oral opinion. We add the following comments.

A.

We review the decision to grant or deny a motion to transfer to the Civil Part for abuse of discretion. Benjoray, Inc. v. Acad. House Child Dev. Ctr., 437 N.J. Super. 481, 486 (App. Div. 2014) (citing Master Auto Parts, Inc. v. M. & M. Shoes, Inc., 105 N.J. Super. 49, 53 (App. Div. 1969)). "A court abuses its discretion when its 'decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

11

"The summary dispossess statute, N.J.S.A. 2A:18-51 to -61, was designed to provide landlords with a swift and simple method of obtaining possession." Benjoray, 437 N.J. Super. at 486 (citing Carr v. Johnson, 211 N.J. Super. 341, 347 (App. Div. 1986)).  Nevertheless, transfer to the Civil Part is appropriate in cases involving "rights or issues too important to be heard in a summary manner."  Master Auto Parts, 105 N.J. Super. at 52; see N.J.S.A. 2A:18-60.  To that end:

> In general, a motion for transfer should be granted whenever the procedural limitations of a summary action (other than the unavailability of a jury trial) would significantly prejudice substantial interests either of the litigants or of the judicial system itself, and, because of the particular facts and circumstances of a specific case, those prejudicial effects would outweigh the prejudice that would result from any delay caused by the transfer.
>
> [Twp. of Bloomfield v. Rosanna's Figure Salon, Inc., 253 N.J. Super. 551, 563 (App. Div. 1992).]

In making this determination, the court should consider "[t]he complexity of the issues presented, [and whether] discovery or other pretrial procedures are necessary or appropriate."  Id. at 562 (quoting Morrocco v. Felton, 112 N.J. Super. 226, 235-36 (Law Div. 1970)).

We are satisfied the court properly denied the motion to transfer.  The case did not involve legal or equitable issues of complexity, nor did it involve rights

12

or issues too important to be heard in a summary manner. The relevant facts were largely undisputed. To the extent they were not, the court heard testimony from all necessary witnesses and was able to assess their credibility. Defendant was not prejudiced by the absence of formal discovery. Other than generally claiming it was denied the opportunity to conduct depositions, defendant does not identify any evidence it was unable to discover pretrial or present at trial. The parties were afforded a full and fair trial in the Special Civil Part, and plaintiff would have been substantially prejudiced by the delay caused by transfer to the Civil Part.

B.

We defer to the trial court's factual findings following a bench trial based on its ability to perceive witnesses and assess credibility. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "'not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). We owe no special deference to a trial court's legal interpretations.

13

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Following that principle, review of the court's application of the doctrine of waiver is de novo. See Skuse v. Pfizer, Inc, 244 N.J. 30, 46 (2020).

Waiver requires "'a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on [its] part.'" W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 152 (1958) (quoting Aron v. Rialto Realty Co., 100 N.J. Eq. 513, 517 (Ch. Div. 1927), aff'd, 102 N.J. Eq. 331 (E. & A. 1928)). Waiver is "a voluntary act[] and implies an election by the party to dispense with something of value, or to forego some advantage which [they] might at [their] option have demanded and insisted on." Allstate Ins. Co. v. Howard Sav. Inst., 127 N.J. Super. 479, 488 (Ch. Div. 1974) (quoting George F. Malcolm, Inc. v. Burlington City Loan & Tr. Co., 115 N.J. Eq. 227, 232 (Ch. Div. 1934)). A party waives its right to enforce a contract provision if it consistently acts in such a way as to indicate that it does not intend to hold the other contracting party to that provision. See Schlegel v. Bott, 93 N.J. Eq. 607, 610 (E. & A. 1922).

We are convinced the court correctly determined 156 Algonquin did not waive its right to rely on the notice provision contained in the Second Amendment. As the court found, even if 156 Algonquin waived the notice

14

provision contained in the Original Lease by executing the First Amendment, it could not have waived a similar provision when it executed the Second Amendment because the First Amendment does not contain an option to extend.

More importantly, when the parties executed the Second Amendment, they renewed the option to extend with a one-year notice requirement and specifically stated time was of the essence. The provision further provides failure to "deliver the Extended Term Notice within such time . . . shall be conclusively deemed to mean that [defendant] has elected not to exercise said option, whereupon such option shall cease and terminate and be of no further force and effect," and "[f]ailure of [defendant] to observe or comply with the terms of this Option to Extend shall render [it] null and void."

As the court found, 156 Algonquin never took any action after the Second Amendment was signed that could demonstrate a "clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on [its] part." W. Jersey Title & Guar. Co., 27 N.J. at 152. If anything, the facts demonstrate 156 Algonquin intended to enforce, not waive, the notice provision the parties included in the Second Amendment. As the court found, "it[ is] not sensible to assert waiver where years after the supposed waiver occurred[,] the parties executed a new agreement that contains a new notice requirement."

15

Defendant did not meet its burden to demonstrate waiver of the notice requirement contained in the Second Amendment.

C.

We are satisfied the court correctly found defendant failed to prove 156 Algonquin breached the implied duty of good faith and fair dealing. "Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). "[T]he implied covenant requires that a contracting party act in good faith when exercising either discretion in performing its contractual obligations or its right to terminate." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 258 (App. Div. 2002) (internal citations omitted). It mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

"Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Brunswick Hills Racquet Club, Inc., 182 N.J. at 225 (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001)). Thus, "[t]he party claiming

16

a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Ibid. (quoting 23 Williston on Contracts § 63.22 at 513-14 (Lord ed. 2002)).

We do not see any basis to disturb the court's determination that the record was devoid of evidence 156 Algonquin did anything to "lull [defendant] into belief that . . . it had accepted the renewal notice" or "engaged in subterfuge, or foot-dragging . . . which . . . made it more difficult to . . . timely exercise that option." The court correctly found defendant failed to produce evidence of "bad faith or other misconduct or . . . fraud . . . that warrants an application of that defense."

## D.

We are persuaded the court correctly found plaintiff did not create a new lease term by receiving and holding defendant's rent checks. The court determined there was no credible evidence plaintiff cashed or otherwise accepted rent payments after the Second Amendment lease term expired. Defendant's reliance on North v. Jersey Knitting Mills, 98 N.J.L. 157 (E. & A. 1922), A.P. Development Corp. v. Band, 113 N.J. 485 (1988), and Carteret

17

Props. v. Variety Donuts, Inc., 49 N.J. 116 (1967) is misplaced. In each of those cases, the landlord accepted rent payments after an alleged breach.

Where a "check was neither cashed nor presented for payment," delivery and holding alone does not constitute acceptance. Colonial Life Ins. Co. of America v. Mazur, 25 N.J. Super. 254, 262-63 (Ch. Div. 1953) (citing Hayes v. Fed. Shipbuilding & Dry Dock Co., 5 N.J. Super. 212 (App. Div. 1949)). There is no basis for us to disturb the court's finding plaintiff did not accept defendant's rent payments in this case and therefore did not create a new tenancy.

E.

Defendant's claim, raised for the first time on appeal, that 156 Algonquin could not assign the Second Amendment to plaintiff lacks merit. We review defendant's argument for plain error. "[T]he question of whether plain error occurred depends on whether the error was clearly capable of producing an unjust result. Relief under the plain error rule, [Rule] 2:10–2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1998) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)).

Defendant argues the assignment was improper because its rights were altered by waiver. This is merely a restatement of defendant's unsuccessful

18

waiver argument. Defendant also contends it was not provided with notice of the assignment. This claim is directly contradicted by Michael's testimony that defendant was notified of the assignment shortly after the closing on the Leased Premises. Because these arguments are without merit, we decline to find any error, much less plain error.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0634-23